WILLIAM T. HAWES & others *vs.* PARDON TILLINGHAST & another.

A. made with B. the following agreement in writing: " Sold B. on joint account with A. two thousand boxes of candles, at twenty six cents, six months from delivery; B. to be allowed two and a half per cent. on sales; on all sales not approved by A. B. is to guaranty the same, receiving a commission of two and a half per cent.; for one half of the sales made by B. he is to pass over the paper to A.; there are to be no charges for storage; property in store to be covered by insurance by B. for joint account and expense:" A. delivered the candles to B. under this agreement, and received from time to time, as the candles were delivered, eight notes of B. for half the value of the candles, payable in six months, two of which were paid by B. at maturity, and the others indorsed and negotiated by A. and afterwards paid by him, B. having become insolvent. *Held,* that these facts showed a sale of an undivided half of the candles by A. to B., and not a partnership between A. and B. with regard to the candles; and that A. therefore had no lien on B.'s half of the candles, as against B.'s assignees in insolvency.

BILL IN EQUITY by Hawes and the firm of Robinson, Wiggin & Company, all partners under the style of the East Boston Manufacturing Company, against the assignees in insolvency of Mixer & Pitman, praying for an account of a joint adventure in which the plaintiffs and Mixer & Pitman were alleged to be jointly interested, and for the payment, out of the property of such joint adventure in the hands of said assignees, of whatever should, upon such account being taken, appear to be due the plaintiffs for their share of said joint adventure, and for the amount advanced and furnished by them for the capital stock thereof.

The parties submitted the case to the court upon the following facts : The plaintiffs, on the 24th of April 1851, by their agents Robinson, Wiggin & Co., made a contract with Mixer & Pitman, a written memorandum of the terms of which was given by each party to the other. The memorandum signed by Robinson, Wiggin & Co., and given by them to Mixer & Pitman, was in these words: " Boston, April 24, 1851. Sold Mixer & Pitman on joint account with Robinson, Wiggin & Co. (for account of East Boston Manufacturing Company) two thousand boxes candles, at twenty six cents, six months from delivery ; one hundred boxes to be delivered each week, commencing first of May. Mixer & Pitman to be allowed two and a half per cent. for sales. On all sales not approved by

Robinson, Wiggin & Co. said Mixer & Pitman are to guaranty the same; receiving a commission of two and a half per cent. For one half the sales made by Mixer & Pitman, they are to pass over the paper to Robinson, Wiggin & Co. There are to be no charges for storage. Property in store to be covered by insurance by Mixer & Pitman for joint account and expense. The candles to be equal in quality to the sample box delivered them this day, which they are to retain; the proportion of sizes to accommodate their sales."

Under this contract, the plaintiffs, from time to time, before the 15th of September 1851, delivered two thousand boxes of candles to Mixer & Pitman, and, as fast as the candles were delivered, received their notes for one half of the value thereof, at twenty six cents a pound. There were eight of these notes, amounting to the sum of $9,100, each payable in six months from its date; two of them, amounting to $2,300, were paid to the plaintiffs by Mixer & Pitman; and the others were indorsed by the plaintiffs and discounted at banks, and were paid by them at maturity.

About the time that Mixer & Pitman suspended payment, the plaintiffs demanded of them all the candles remaining unsold; and Mixer & Pitman delivered them one thousand boxes, but refused to deliver the remainder. On the 22d of January 1852, Mixer & Pitman, having sold two hundred and nineteen boxes of the candles, applied for the benefit of the insolvent laws; and on the 5th of February the defendants were appointed their assignees; and the seven hundred and eighty one boxes, remaining unsold, were taken possession of by the messenger and by the defendants, and were afterwards sold by the defendants.

The transaction above stated was the only one of the kind, that the plaintiffs and Mixer & Pitman ever had together. There were no outstanding debts or liabilities under this agreement against said firms or either of them, other than the notes of Mixer & Pitman given to the plaintiffs.

*S. Bartlett & D. Thaxter*, for the plaintiffs. Under the agreement made in this case, the candles, as delivered to Mixer & Pitman, vested in them and the plaintiffs as partnership property,

and the plaintiffs therefore have a lien thereon for the amount of their capital, advances and disbursements; and are entitled to so much of the property, as may appear to. belong to them upon the result of the partnership accounts. Collyer on Partn. (3d Amer. ed.) §§ 23, 55, 125, 126, 127.   Story on Partn. §§ 407, 408. Cross on Lien, 193.   *Holderness* v. *Shackels,* 8 B. & C. 612. *Pierce* v. *Tiernan,* 10 Gill & Johns. 253.   *Dyer* v. *Clark,* 5 Met. 562, 578.   *Parker* v. *Muggridge,* 2 Story R. 334.   *Ex parte Terrell,* Buck, 348.   *Ex parte King,* 17 Ves. 115.   1 Ves. Jr. (Amer. ed.) 241, *note* 3.   The plaintiffs' lien is not affected by taking the notes of their copartners.   *Arnold* v. *Delano,* 4 Cush. 41.   *Pierce* v. *Tiernan,* 10 Gill & Johns. 262, 266.   Yelv. (Amer. ed.) 67 *i, note.*   Cross on Lien, 93.   Nor by the negotiation of the notes with the plaintiffs' indorsement; they having subsequently, and before the partnership was wound up, been paid by the plaintiffs, and remaining in their hands. *Ex parte Loaring,* 2 Rose, 79.   *Stevenson* v. *Blakelock,* 1 M. & S. 536, 544.   Cross on Lien, 93.   *Burdick* v. *Green,* 15 Johns. 247. *Schnebly* v. *Ragan,* 7 Gill & Johns. 120.   *White* v. *Williams,* 1 Paige, 502.

*R. Choate & H. C. Hutchins,* for the defendants, cited, to the point that the agreement between the plaintiffs and Mixer & Pitman did not constitute them partners, *Finckle* v. *Stacey,* Sel. Ca. Ch. 9, as stated in Collyer on Partn. § 21 ; *Reggio* v. *Braggiotti,* 7 Cush. 166; *Rice* v. *Austin,* 17 Mass. 197; *Hazard* v. *Hazard,* 1 Story R. 371; 3 Kent Com. (6th ed.) 27, 28; 1 Parsons on Con. 133, 146; *Gill* v. *Kuhn,* 6 S. & R. 333; *Turner* v. *Bissell,* 14 Pick. 192; Story on Partn. §§ 41 – 48; *Loomis* v. *Marshall,* 12 Conn. 69; *Putnam* v. *Wise,* 1 Hill's (N. Y.) Rep. 239, and cases there cited; *Hesketh* v. *Blanchard,* 4 East, 144; *Muzzy* v. *Whitney,* 10 Johns. 228; and, to the point that the plaintiffs, by taking and negotiating the notes of Mixer & Pitman, lost any lien they might otherwise have had, *Thurston* v *Blanchard,* 22 Pick. 18; *Ilsley* v. *Jewett,* 2 Met. 173; *Holly* v. *Huggeford,* 8 Pick. 73; *Arnold* v. *Delano,* 4 Cush. 33.

SHAW, C. J.   The character of the original transaction, we think, expounded by the simultaneous acts of the parties, was

that of a sale by the plaintiffs of one undivided half of the two thousand boxes of candles at a fixed price, to be paid for by the negotiable notes of Mixer & Pitman, on six months credit from the time of delivery. The candles were afterwards delivered, and eight notes were given therefor, two of which had been paid and taken up by Mixer & Pitman, as promisors, before their failure. Here were a purchase and payment of one undivided half, which made the parties tenants in common of the whole parcel, and of every box and every candle. The agreement for a consignment to one of the parties to be sold on joint account, although made simultaneously with the sale, and perhaps constituting one motive with the insolvents, to make the purchase, was nevertheless distinct from it, and presupposed and was founded on the fact, that the parties had become equally owners of the property, as tenants in common, which could only be by purchase. The joint connection commenced with the consignment, and embraced whatever was incident to it and followed it. It would render them, jointly, liable for incidental expenses, and entitled to all benefits. If the property had been insured, the premium would have been a joint charge; had a loss by fire been sustained and recovered of the insurer, it would have been recovered for their joint benefit.

But the argument of the plaintiffs is, that the original agreement was an agreement for a partnership, in the sale on joint account of the whole two thousand boxes of candles; that these constituted the whole capital; that the plaintiffs advanced the whole capital, being owners of the whole, put in under this agreement; that the purchase of the whole was a charge on the joint fund; and that the notes were given by Mixer & Pitman, not as payment, but simply as memoranda, expressive of the items with which they should be chargeable in partnership account, and which must be paid out of the partnership fund, before they would be entitled to distribution of any proceeds. But it appears to us, that the contract and the acts done under it will not warrant this construction, so as to make these notes a specific charge on the joint fund, before distribution. On the contrary, it appears to us, that upon a settlement of the joint o:

partnership account, arising from the joint consignment, these notes would not have been a charge in favor of the plaintiffs, upon the joint fund, to be deducted from the fund and allowed the plaintiffs, before Mixer & Pitman could claim distribution. It was not an advance of the whole of the capital, by one of the partners. It was rather a purchase by one party and a sale by the other; and the vendors remaining owners of the other half, each put in one half of the merchandise, constituting the capital, on which the consignment for sale on joint account was made.

The fact that the notes were made negotiable, and payable at a time certain, without regard to the sale of the candles, the fact that they were all negotiated but two, and that those two, which fell due before the failure, were actually paid at maturity, tend to confirm the conclusion that they were regarded as payment. The stipulation, that Mixer & Pitman were to pass over to the plaintiffs one half of the notes, to be received by them on their sales of the property, leads to the same conclusion. It carries the implication, that Mixer & Pitman were to retain the other half of the notes to their use, to be accounted for on an ultimate settlement; whereas Mixer & Pitman, on the plaintiffs' theory, would have no equitable right to retain any of the proceeds of the sale, beyond their current expenses, until the whole capital had been reimbursed. It appears to us analogous to a case, where two different parties had purchased each one thousand boxes, of several vendors or of the same vendor, and each given his notes for his purchase, and then they had agreed to consign them to the same factor, either one of themselves or a third person, to be sold on joint account and share profit and loss; the holders of those notes could have no claim on the candles, in the hands of the consignee, in security of his notes. This, though not so plain a case, seems to us analogous to it in principle. The court are therefore of opinion that the plaintiff had no lien, for the amount of these notes, on the fund arising from the sale of these candles; especially after they went into the hands of the defendants, as assignees of Mixer & Pitman. *Bill dismissed.*