JAMES WARD et al., Respondents, v. HENRY H. BODEMAN et al., Appellants.

### February 28, 1876.

1. The registered owner is not necessarily the sole legal owner of a vessel. To make the register evidence of property, it must be shown that it was made with the assent of the party sought to be affected by it.

2. The mere fact of part ownership of a boat does not make the part owners copartners.

3. The master of a boat, in ordering supplies, is the agent, not of the owner of the boat, as such, but of those who have control of the vessel and the right to receive her freight; and mere ownership of a vessel, without any right to the profit or usufruct, will not of itself make one liable for supplies furnished to her.

4. One who has loaned money to a boat, and has a claim, to some extent, upon her earnings for repayment, does not, by these facts, become liable for supplies furnished to her, when these facts are known only to the owners and himself.

APPEAL from St. Louis Circuit Court.

*Reversed and remanded.*

*Hitchcock, Lubke & Player*, for appellants, cited: Glasgow v. Ridgley, 11 Mo. 26 ; Walsh v. Agnew, 12 Mo. 525 ; Fox v. Webster, 46 Mo. 185 ; Prim v. Raboteau, 56 Mo. 407 ; Bauer v. Franklin County, 51 Mo. 206 ; Harrington v. Fry, 2 Bing. 180, 181 ; Schneer v. Lemp, 17 Mo. 142 ; Fine v. Public Schools, 30 Mo. 176 ; Anderson v. Kincheloe, 30 Mo. 520 ; Gilliam v. Ball, 49 Mo. 249 ; Jones v. Jones, 57 Mo. 142, 143 ; Trewhella v. Rowe, 11 East, 436, Lord Ellenborough, C. J. ; Boat and Ship Registry Laws of the United States, Rev. Stat. of U. S., title 17, and particularly secs. 4192, 4196 ; Campbell v. Dent, 54 Mo. 325, and cases cited ; Story on Part. (5th ed.) sec. 49 ; Pars. on Part. (6th ed.) 69.

*Rankin & Hayden*, for respondents, cited: Pars. on Part. (ed. 1867), ch 6, p. 62, text and note *a* ; Myers v. Waller, 17 C. B. 77 , 33 Eng. Law & Eq. 204 ; 1 Pars. on Ship. & Ad. (ed. 1869), ch. 5, p. 129, *et seq.*, and notes ;

Howard v. Odell, 1 Allen (Mass.), 85; Blanchard v. Fearing, 4 Allen (Mass.), 188; White's Bank v. Smith, 7 Wall. 646; Aldrich v. Ætna Co., 8 Wall. 491; Blanchard v. Brig Martha Washington, 1 Cliff. 463, 471; Mott v. Ruckman, 3 Blatchf. 71; 1 Pars. on Ship. & Ad. (ed. 1869), ch. 4, p. 91; 1 Pars. on Ship. & Ad. (ed. 1869), ch. 5, pp. 125, 126, 131; Hinton v. Law, 10 Mo. 701; Kenzel v. Kirk, 37 Barb. 113; Owens v. Davis, 15 La. An. 22; Merritt v. Walsh, 32 N. Y. 685.

BAKEWELL, J., delivered the opinion of the court.

Plaintiff's claim, in their petition, $1,536.48 for supplies for the use of the steamer 'Kate Kearney,' which they say defendants, at the time the goods were furnished, owned, and were engaged in running on their joint account.

Defendant Erfort filed a separate answer denying that he owned the boat, or any interest in her, or that he was engaged in running her, or interested in her profits, or a copartner with the other defendants in the business of running the boat. The other defendants filed a joint answer denying every material allegation of the petition. Before trial Bodeman's answer was withdrawn, and judgment by default entered against him. There is no contest as to the fact that the goods were worth the amount charged, nor that they were furnished for the use of the boat, on the order of the proper officers, nor as to the liability of defendants Bodeman and McPherson. The controversy is wholly as to the liability of defendant Erfort.

It appeared in evidence that defendant Erfort was a member of the firm of Erfort & Pietring, which firm had directed defendant McPherson to purchase the 'Kate Kearney,' at public sale, at a price not to exceed $2,500. McPherson, who had only $500 of his own money, bought her in for $3,750, in his own name, and paid his $500 on his bid. Erfort & Pietring refused to have anything to do with her at that price, but, finally, Erfort alone, being unwilling that McPherson should lose the $500 advanced by him on his

bid, paid the balance of the purchase money by indorsing notes of McPherson, which Erfort afterwards paid. The boat was then sent to the docks for repairs, and, whilst she was on the ways, Bodeman asked McPherson if he could buy an interest in her. McPherson referred him to Erfort, who sold Bodeman a one-third interest in the boat for $2,500, which Erfort then received on account of the amount for which he was liable on the McPherson notes indorsed by him.

When the boat came off the ways she was at once made ready for a trip to New Orleans, with the assent of all three defendants. McPherson was captain and Bodeman clerk, though Erfort swears that Bodeman knew little or nothing about steamboat business or accounts, and Bodeman swears he made all entries on the books by McPherson's directions. The dock bill was presented to Erfort.

It was originally $9,000, but he got it reduced to $8,279.25, which Erfort paid, taking an assignment of the hull policy.

He also advanced $500 for current expenses of the boat, and paid $450 to discharge a debt she owed. The bill of sale for the boat was, by Erfort's direction, taken to McPherson and Bodeman, and she was enrolled at the custom house in their name. Erfort swears that he was not interested in the boat, but intended to take a mortgage on her, to secure his advance; but this was not done. William Bodeman swears that Erfort told him he had an interest in the boat, and defendant Bodeman swears that they were joint owners, each owning one-third, by agreement. McPherson corroborated Erfort's testimony as to ownership. The boat made one trip to New Orleans, returned to Cairo, and was sunk on her return from Cairo to New Orleans. The freight insurance was to have been given to the creditors, but McPherson collected and pocketed it. Erfort requested Bodeman to show him how the boat stood, and Bodeman swears he made out a written statement of her affairs, in

which he put down each of the defendants as partners to the amount of one-third; that he handed this to Erfort, who took no exception to it. Bodeman also swears that it was distinctly understood from the first, and all through, that the defendants owned the boat together in equal shares, and were to have each one-third of her profits as partners in the adventure, and, as to this, the record has this admission: "On cross-examination, defendant Erfort, in reply to repeated questions whether he would swear that there was not any understanding between him and Bodeman, at the interview between Bodeman and Erfort, to the effect that Bodeman was to be interested to the extent of one-third, and Erfort to the extent of one-third, in the boat, Erfort said that he would not undertake to swear positively that there was no such understanding." The hull policy was collected by Erfort, and applied by him towards repayment of his advances for the boat.

There was a verdict and judgment against all the defendants, and a motion for a new trial having been overruled, and all exceptions being duly saved, defendant Erfort brings the case here by appeal.

Defendant asked the court to instruct the jury that, on the evidence, the plaintiff was not entitled to recover against Erfort. Also, second, that, to find for plaintiff against Erfort, the jury must find from the evidence that, at the date of plaintiff's account, Erfort owned an interest in the boat, and was duly registered as such owner, or that he had chartered a share of her, and that the supplies in question were furnished on Erfort's credit as such owner or charterer. Also, third, that, if the boat was purchased by McPherson without Erfort's authority; that, to enable McPherson to complete the purchase, Erfort loaned him, or became responsible to pay for him, $3,200; that McPherson then sold Bodeman an interest in the boat, for which Bodeman gave Erfort $2,500, as part payment of the money previously advanced by Erfort to McPherson, or for which Erfort had

become liable; that the paper title was then conveyed to Bodeman and McPherson, one-half to each; that then, and solely to accommodate them and enable them to start running the boat, Erfort loaned them, on the boat, $500, and became responsible for the dock bill, receiving the insurance on the boat as security; that Erfort, to accommodate McPherson and Bodeman, paid out on account of, or became responsible for, specified claims against the boat, and that Erfort never had any interest in the boat as owner, or in its profits and losses, no recovery can be had against Erfort herein.    Fourth, that the facts of Erfort's interest in the profits and losses of the boat, or in running the boat, must be proved, and can only be proved by showing an agreement between himself and Bodeman and McPherson to that effect.

These instructions were refused, and defendant Erfort excepted.

The following instructions were then given by the court, at the instance of plaintiff, and to the giving these instructions defendant excepted:

1. "The jury are instructed that the bill of sale read in evidence does not settle or decide the title to the boat, but it is for the jury to say, from all the evidence in this case, what relation the defendants occupied towards the boat, and in whom the ownership or interest really was. It is not necessary for plaintiffs, in order to make out their case, to show that any written instrument was executed, or any particular form gone through with."

2. "If the jury believe from the evidence that Erfort was really a part owner, engaged with the other part owners of the boat in fitting her out and running her, he is liable in the same manner as if he had acknowledged himself to be such part owner; but the jury are instructed that it is not essential, in order to render Erfort liable, that he should have been a part owner.    If he was interested in getting out the boat and running her, so that if profits were made

he was to share those profits, no matter in what proportion, with McPherson and Bodeman, then, though Erfort was not to be known to outsiders or third persons as interested, he is liable in the same manner as if he had been acknowledged part owner, engaged with the others in running the boat for their joint benefit.''

3. "If the jury believe that there was an agreement or understanding among the defendants that the boat should be got out and run for their common benefit and profit, and that she was fitted out and run under such an agreement or understanding, then, so far as third parties, such as the plaintiffs, are concerned, this made the defendants partners, and made all of them liable as such.''

The court gave the following instruction, at the instance of defendant.

1. " The court instructs the jury that the burden of proof in this case, as against the defendant Erfort, is upon the plaintiff, and that, before they can find against said Erfort, they must be satisfied, from all the evidence, that, at the dates stated in the petition, he was in fact part owner of the ' Kate Kearney,' or interested in running said boat for profits ; and if the jury believe from the evidence that said boat was purchased by defendant McPherson for $3,750 ; that, to enable him to complete such purchase, defendant Erfort loaned or became liable for, and afterwards paid for, said McPherson, $3,200, and that the $2,500 given by defendant Bodeman to said Erfort, when said Bodeman acquired an interest in said boat, was received and paid on account of the money previously advanced by said Erfort to said McPherson to pay for said boat ; that the moneys subsequently laid out by said Erfort for said boat, and indorsements and guaranties given for it by him, were given for the accommodation of the defendants McPherson and Bodeman, and as loans to them on the boat, and not as part owner or one interested in the earnings thereof, then the jury will find for the defendant Erfort, provided they also

believe from the evidence that there was no agreement between McPherson, Bodeman, and Erfort that said Erfort should share in the profits or losses of the boat.''

It is claimed by the plaintiff that the evidence shows that defendant Erfort was, first, interested in the profits of the boat; second, a copartner with his co-defendants in running her; and, third, a part owner of the boat; and that the proof of either one of these three propositions is enough to establish his liability. Defendant, on the other hand, insists:

1. That the registered owner is the sole legal owner of a boat.

2. That a man can be charged in respect of property in a ship only either on credit given to him as legal owner, or by having held himself out as such, and cannot be held as secret part owner unless credit is given to him directly.

It is a little singular, in view of these positions of defendant, that, in his third instruction refused, he himself seems to submit the question of Erfort's interest in the profits and losses of the boat as decisive of his liability.

There is abundant evidence from which the jury could find Erfort both a partner in running the boat, and interested in the profits, and that wholly outside of the question as to whether, in view of the decision in *Campbell* v. *Dent*, an agreement between parties to that effect is necessary to make them, in this State, partners as to those having dealings with them.    There is evidence that there was an understanding and agreement between defendants that Erfort was a partner, and had that issue been found by a jury in favor of plaintiffs, the verdict could not, in this case, have been set aside as wholly unsupported by evidence, however minds may differ as to the preponderance of it.    There is, also, evidence enough that Erfort had, by agreement, one-third of the profits, and, also, that he was part owner, if he could be part owner whilst the boat was enrolled in the name of Bodeman and McPherson alone, and we hold that, undoubtedly, he could.

Neither register nor enrollment, nor even a bill of sale, are necessary as muniments of title in question between parties, not affecting the privileges of the vessel.

The register itself is not of itself evidence of property, unless it be shown directly or circumstantially that it was made by the authority or assent of the party who is sought to be affected by it. With proof of such assent or authority it is evidence, though not, even then, conclusive. The defendant seeks to give a construction to the registry laws of the United States which they will not bear, and which they were never intended to receive, and his citation of English cases in support of his position does not sustain his views. In *Harrington* v. *Fry*, 2 Bing. 180, the defendant had nothing whatever to do with the management of the vessel, nor had he been consulted about her, nor derived profit from her ; and in *Trewhella* v. *Rowe*, 11 East, 435, the ship-owner, after ordering supplies, conveys the vessel to a third party, whom the material man seeks to charge, but he is discharged on the ground that the party liable is the man who owned the ship when the supplies were ordered.

The case did not turn on the registration of the vessel ; there was no evidence at all that he was owner. Pars. on Ship. & Ad. 1, 5, 129 ; *Duff* v. *Bayard*, 4 Watts. & S. (Penn.) 240 ; 7 Wall. 646.

The registry laws are not intended as a contrivance to enable a rogue, by covering up his title, to cheat his creditors, and they would be so if they could be interpreted as defendant in this case insists. These acts have nothing to do with the personal liability of the owners in a case such as presented by this record.

A ship, like any other article of property, may be owned by one person, or by several persons in common.

In the latter case they are called part owners. They are not by such ownership, nor by a division of its freight or earnings, thereby made partners ; though a ship, like any other valuable, may constitute part of partnership stock,

and then the owners are not properly part owners, but partners.

So it is in regard to all other property.

The question as to who might happen to be the registered owner, or even the legal owner, of the boat, is not necessarily decisive of this case.

To quote the language of Judge Sergeant, in *Duff* v. *Bayard*, 4 Watts & S. (Penn.) 249 : " That the owners of a vessel are liable for supplies or necessaries furnished for her use by the order of the master, when no other person has been expressly credited, is a principle long established. But who is such owner, in any given case, is a question on which there are to be found contradictory cases and fluctuating opinions in the reports. The later decisions seem, however, to agree that one having the legal title only, without any interference in the management of the ship, or any right to receive her freight or earnings, is not responsible, whether the title is by a bill of sale or other sufficient conveyance, or whether it is by a mortgage or other document in the nature of a pledge or other security. Such persons are, it is true, in one sense owners—that is to say, they have a valid claim or title to the property of the vessel, either in law or in equity. But that is not sufficient.

" The owner who is responsible in such cases is the person who, having some kind of claim or title, has the control and management of the vessel, and has a right to receive her freight and earnings. And the ground of this liability seems to be the common maxim, *qui sentit commodum, sentire debet et onus,* it being obviously right and just that he who enjoys the benefits of a vessel and controls her operations, who receives her gains, or has a chance of so doing, ought to pay debts incurred for the fitting out, supply, or navigation of the vessel which is to produce for him those earnings, and not a person who merely owns a right in her without the profit or usufruct. It is for the former of these, and not for the latter, that the master is considered as agent, and

-competent to bind them by his orders for supplies furnished to the vessel.''

We have gone somewhat at length into the questions of law applicable to this case, as it seems to have been tried, -on both sides, on views of the law which we regard as incorrect.

The second instruction given for plaintiff not only directs the jury that, to make Erfort liable, it is not necessary to find that he was a part owner, but goes much further, and tells them that if he was interested in the profits to any degree, although not known to outsiders to be interested, that fact alone makes him liable for supplies furnished to the boat. We know no authority that goes to such a length.

Under this instruction, if Erfort was not an owner, but had simply loaned money to the boat, and had a claim, to any extent, upon her earnings for his repayment, though these facts were known only to the owners and himself, he would, *ipso facto*, be liable for her supplies.

This, we conceive, is not the law. For the error in giving this instruction the judgment of the Circuit Court must be reversed, and, the other judges concurring, it is reversed and the cause remanded.