STATE BANK OF LUSHTON V. O. S. KELLEY COMPANY.

FILED MARCH 18, 1896.     No. 6353.

1. **Partnership:** JOINT OWNERSHIP OF THRESHING-MACHINE: EVIDENCE. Evidence that two farmers purchased a threshing-machine, paid for the same with their joint

and several notes secured by a chattel mortgage on the machine purchased, and jointly took possession of and used the machine in threshing grain for others, will not support a finding that the threshing-machine was partnership property, nor that a copartnership relation existed between the farmers. Such evidence warrants rather the conclusion that the farmers were joint owners or tenants in common of the machine.

2. Chattel Mortgages: FAILURE TO REGISTER: SUBSEQUENT LIENS: REPLEVIN. In such case the machine company neglected to file its mortgage or a copy thereof in the county where the farmers resided. Subsequently one of the farmers mortgaged the machine to a bank to secure a pre-existing debt which he owed it. The bank had no knowledge of the mortgage of the machine company, took possession of the machine under its chattel mortgage, and the machine company replevied it. *Held*, (1) That the mortgage made by the farmer invested the bank with a lien on whatever interest he had in the machine; (2) that the bank was a mortgagee in good faith within the meaning of section 14, chapter 32, Compiled Statutes.

3. ———: ———: ———. A mortgagee in good faith, within the meaning of section 14, chapter 32, Compiled Statutes, is one who takes his mortgage to secure a debt actually and justly owing to him, without notice, actual or constructive, of other existing claims against the mortgaged property.

ERROR from the district court of York county. Tried below before BATES, J.

*George B. France,* for plaintiff in error.

*Sedgwick & Power,* contra.

RAGAN, C.

On the 8th day of May, 1891, Peter Peters and John Peters, by their order or contract in writing, purchased a threshing-machine of the O. S. Kelley Company. The machine was to be delivered to them not later than the 20th of July of that year and they were to pay for the same $585. Part of

this payment was to be made in cash on delivery
of the machine and the remainder to be evidenced
by their notes, secured by a chattel mortgage on
the machine. The machine was delivered on the
23d of July, cash payment made, and John and
Peter executed their joint and several promissory
notes to the Kelley Company for the remainder of
the purchase price of the machine, and at the
same time executed to the Kelley Company a
chattel mortgage on the machine to secure the
payment of their notes. By mistake this mort-
gage was filed in the office of the county clerk of
York county, although the mortgagors resided in
Hamilton county. On the 13th day of October,
1891, Peter Peters mortgaged the threshing-
machine to the State Bank of Lushton to secure
a debt which he then, and had for some time,
owed the bank. The bank subsequently took pos-
session of the threshing-machine under its chattel
mortgage and was proceeding to foreclose the
same when the Kelley Company, by this action,
replevied the threshing-machine from the bank.
The action was tried to a jury in the district court
of York county, a verdict and judgment rendered
for the Kelley Company, and the bank prosecutes
to this court a petition in error.

1. On the trial the district court, at the request
of the Kelley Company, instructed the jury as fol-
lows: "The jury are instructed that the law is
that partnership effects cannot be released from
liability for the unpaid debts of the partnership
without the consent of every member of the firm.
The corpus of partnership effects is joint property
and neither partner separately has anything in
that corpus; but the interest of each is only his
share of what remains after the partnership ac-

counts are taken. In this case, if you believe from the evidence that Peter Peters and John Peters purchased of the plaintiff in this case the power and separator described in the plaintiff's petition, in partnership, to be used and operated by them in threshing; and as a part of the transaction the said Peter Peters and John Peters executed and delivered to the plaintiff the notes and mortgage described in the petition and put in evidence by the plaintiff in this case, to secure the payment of the purchase price of the said outfit, then the plaintiff in this case would have the first lien upon the property in question to the amount unpaid upon said mortgage, and the said Peter Peters would have no right to execute a mortgage upon the said threshing outfit to secure his individual indebtedness, to the prejudice of the plaintiff in this case; and any mortgage so given by the said Peter Peters to secure his individual indebtedness would be subject to the mortgage of this plaintiff, regardless of whether plaintiff's mortgage was ever filed in the office of the clerk of the county or not." The first assignment of error argued is directed to the giving of this instruction. The evidence shows that John and Peter Peters were farmers and brothers residing in Hamilton county at the time they purchased the threshing-machine and executed the notes and mortgage to the Kelley Company; that Peter Peters and a son of John Peters accompanied the machine from place to place and used it in threshing grain. Whatever may be said of this instruction as an abstract proposition of law, we think it had no place in this case. It submitted to the jury the question as to whether John and Peter were co-partners, and there is no evidence what-

ever in the record which would justify the jury in making such a finding. Counsel for the defendant in error assume that because John and Peter jointly purchased and jointly owned this property, that therefore a partnership relation existed between them; but such a result by no means follows. They were rather joint owners or tenants in common, so far as the record shows, of the property. In *Waggoner v. First Nat. Bank of Creighton*, 43 Neb., 84, it was held, following the definition given by Chancellor Kent, that "Copartnership is a contract of two or more competent persons to place their money, effects, labor, skill, or some or all of them, in lawful commerce or business, and to divide the profit or bear the loss in certain proportions;" and in *Iliff v. Brazill*, 27 Ia., 131, it was held: "Where two farmers buy in common a threshing-machine, which they use and operate together, and for which they execute to the vendor a note, signed by both individually, they are to be treated as joint owners and not as partners." In *Quackenbush v. Sawyer*, 54 Cal., 439, it was held that "a mere joint ownership in personal property does not constitute a partnership." To the same effect see *Wheeler v. Farmer*, 38 Cal., 203; *Hawes v. Tillinghast*, 67 Mass., 289; *Goell v. Morse*, 126 Mass., 480; *Moore v. Curry*, 106 Mass., 409; *Vose v. Singer*, 86 Mass., 226; *Donnan v. Gross*, 3 Ill. App., 409; *Sargent v. Downey*, 45 Wis., 498; *Cinnamond v. Greenlee*, 10 Mo., 578; *Ward v. Bodeman*, 1 Mo. App., 272; *Runnels v. Moffat*, 41 N. W. Rep. [Mich.], 224. We do not say that John and Peter were not partners, nor that the threshing-machine was not partnership property, but what we do decide is that the mere fact that they jointly purchased, owned, and operated the

threshing-machine does not establish that a co-partnership existed between the joint owners, nor that the threshing-machine was copartnership property. So far as the record before us goes, John and Peter were joint owners—tenants in common—of the threshing-machine, and the bank acquired a lien upon the interest of Peter Peters in the threshing-machine by virtue of the mortgage he made thereon.

2. The court, on its own motion, also instructed the jury as follows: "If you find from the evidence that the cashier or assistant cashier of the defendant, the State Bank of Lushton, had actual notice or knowledge of plaintiff's mortgage upon the threshing-machine and power in controversy at the time or prior thereto of taking the mortgage of Peter Peters in favor of such bank upon such machinery, then such bank is not a mortgagee in good faith and your verdict should be for the plaintiff." The second assignment of error argued is directed to the giving of this instruction. Counsel for plaintiff in error says, and correctly says, that the instruction was wrong because there was no evidence in the record which justified its being given. The only evidence in the record which tends to show, if that does, that the bank officers had any knowledge or notice of the mortgage held by the Kelley Company is this: The bank was a subscriber for a "bulletin" issued by someone in York county, which bulletin gave the names of parties making mortgages filed in York county and a description of the mortgaged property. It was shown that a bulletin which came to the bank soon after July 23, 1891, recited that John and Peter Peters had executed a chattel mortgage to the Kelley Com-

pany on a threshing-machine, such as the one in
controversy, and that this mortgage had been
filed in the clerk's office of York county, but there
is no evidence in the record that any officer or
agent of the bank ever read this bulletin.    If the
jury had specially found that the officers of the
bank had.actual knowledge or notice of the mort-
gage of the Kelley Company, the evidence would
not have supported the finding, and the court
therefore erred in giving the instruction.

3. But it is insisted by the defendant in error
that the judgment rendered was the only one
which could have been correctly rendered under
the facts in evidence in the case; and that, there-
fore, all errors in the record are without preju-
dice to the plaintiff in error.    This contention
rests upon the fact that the undisputed evidence
shows that the mortgage made to the bank by
Peter Peters on the threshing-machine was made
to secure a then pre-existing debt, and that, there-
fore, the bank is not a mortgagee in good faith,
within the meaning of section 14, chapter 32,
Compiled Statutes, which declares that "every
mortgage or conveyance intended to operate as a
mortgage of goods and chattels hereafter made,
which shall not be accompanied by an immediate
delivery and be followed by an actual and con-
tinued change of possession of the things mort-
gaged shall be absolutely void as against the cred-
itors of the mortgagor, and as against subsequent
purchasers and mortgagors in good faith, unless
the mortgage, or a true copy thereof, shall be filed
in the office of the county clerk of the county
where the mortgagor executing the same resides,"
etc.    It is not pretended but that John and Peter
Peters    retained    possession    of    the    threshing-

machine after they mortgaged it to the Kelley Company; nor that this mortgage, or any copy of it, was ever filed in the office of the county clerk of Hamilton county, where the mortgagors resided, nor that Peter Peters was not justly indebted to the bank. The sole contention is that a mortgagee of chattels to secure a pre-existing debt is not a mortgagee in good faith. To sustain this contention counsel cite us to *Tootle v. First Nat. Bank of Chadron,* 34 Neb., 863. In that case it was correctly held that "when goods obtained by fraud have been mortgaged by the fraudulent vendee solely to secure a pre-existing debt due from him to the mortgagee, the latter cannot claim the protection which the law affords an innocent and *bona fide* purchaser of property from a fraudulent vendee;" but in that case the mortgagor had obtained possession of the property which he mortgaged by fraud; the title as between him and his vendor had never passed. By making the mortgage to the Chadron bank the bank acquired only a lien upon such interest as its mortgagor had, and that interest was nothing, and therefore the bank acquired nothing. In the case at bar, however, the title and possession of the threshing-machine without fraud passed and vested in John and Peter, and the bank acquired by the latter's mortgage a lien on whatever interest Peter had in the threshing-machine. A mortgagee in good faith, within the meaning of the statute quoted, is one who takes his mortgage to secure a debt actually and justly owing to him, without any notice, actual or constructive, of other existing claims against the mortgaged property. The case cited to sustain the argument of counsel for the plaintiff in error is not in point.

The judgment of the district court is reversed and the cause remanded.

REVERSED AND REMANDED.

POST, C. J., not sitting.