KATE TOOTLE ET AL. V. FIRST NATL. BANK OF
CHADRON.

[FILED JUNE 11, 1892.]

1. **Sale: FRAUD: RESCISSION.** When goods are sold upon credit induced by the fraudulent representations of the purchaser as to his financial ability, the vendor may rescind the contract within a reasonable time after the discovery of the fraud, upon a return, or offer to return, of the consideration received by him and reclaiming the goods as against any one not a *bona fide* purchaser for value without notice of the fraud.

2. ——: ——: ——: RESALE BY PURCHASER. But where the fraudulent vendee has sold part of the goods to innocent parties, the original vendor may retain of the consideration an amount equal to the value of the goods parted with by his vendee, and tender the balance of the consideration.

3. ——: ——: MORTGAGE BY PURCHASER FOR PRE-EXISTING DEBT. When goods obtained by fraud have been mortgaged by

the fraudulent vendee solely to secure a pre-existing debt due from him to the mortgagee, the latter cannot claim the protection which the law affords an innocent and *bona fide* purchaser of property from a fraudulent vendee.

4. ———: ———: REPLEVIN: THE PETITION examined, and *held* to state a good cause of action in replevin.

ERROR to the district court for Dawes county. Tried below before KINKAID, **J.**

*Spargur & Fisher,* and *F. M. Dorrington & Sons,* for plaintiffs in error:

In this case it was necessary only for the plaintiffs to prove, first, that vendee Yates bought the goods in controversy; second, that vendee practiced deceit and deceived vendors; third, that plaintiffs rescinded the contract. (*Farwell v. Hanchett,* 9 N. E. Rep. [Ill.], 58.) The amended petition was framed after the decision in case of *Oswego Starch Co. v. Lendrum,* 10 N. W. Rep. [Ia.], 900. (*Shellabarger v. Binn,* 18 Kan., 345.) When goods are paid for and in part disposed of by a fraudulent vendee, the vendor in replevin suit for fraud need not refund money paid unless it more than offsets amount of goods sold. (*Schoonmaker v. Kelly,* 42 Hun [N. Y.], 299; *Hersey v. Benedict,* 15 Id., 282; *Collins v. Cooley,* 14 Atl. Rep. [N. J.], 574; *Henderson v. Gibbs,* 18 Pac. Rep. [Kan.], 926; *Crane v. Trentman,* 34 Fed. Rep., 620; *Ross v. Miner,* 31 N. W. Rep. [Mich.], 185.

*Albert W. Crites, contra:*

The petition states a cause of action against Yates alone, to whom plaintiffs aver they sold the goods, but it in no way negatives the right of the bank to hold the goods. (*Oswego v. Lendrum,* 10 N. W. Rep. [Ia.], 900.) In replevin the specific facts may be pleaded. (*Westover v. Vandoran,* 29 Neb., 652.) Plaintiffs, on rescission, were bound to return money paid on the contract. (2 Parsons, Cont.,

678; *Doan v. Lockwood,* 4 N. E. Rep. [Ill.], 500.) The title obtained on a fraudulent sale is voidable merely, at the election of the defrauded vendor. (*Tootle v. Dunn,* 6 Neb., 93; *Addington v. Allen,* 11 Wend. [N. Y.], 375; *Ransom v. Schmela,* 13 Neb., 77; *In re Giles,* 44 N. W. Rep. [Ia.], 553; *Aultman v. Mallory,* 5 Neb., 178; *Mc-Cormick v. Stevenson,* 13 Id., 70.) The specific statements and acts relied on as constituting the fraud must be set out. (*Wickham v. Morehouse,* 16 Fed. Rep. [Pa.], 324; *Tepoel v. Bank,* 24 Neb., 815.) A fraudulent representation, to form a basis of action, must relate to some fact or existing fact. (*Gallager v. Brunel,* 6 Cow. [N. Y.], 350; Kerr, Fraud & Mistake, 88; *Kitson v. People,* 23 N. E. Rep. [Ill.], 1024.) It is no actionable fraud for an insolvent to buy without disclosing his condition. (*Kitson v. People,* 23 N. E. Rep. [Ill.], 1024; *Blow v. Gage,* 44 Ill., 208; *People v. Healy,* 128 Ill., 14.) Plaintiffs allowed the apparent ownership of the goods to appear to be in Yates, and their rights should for that reason, if for no other, be postponed to the rights of the defendant in error. (*Chickering v. Bastress,* 22 N. E. Rep. [Ill.], 542.)

NORVAL, J.

Plaintiff in error brought replevin in the district court to recover a quantity of dry goods and notions of the stipulated value of $309.37. At the close of plaintiff's testimony the court, on motion of defendant, instructed the jury to find the right of property and the right of possession in the defendant at the commencement of the action. Verdict was returned as directed by the court, and judgment was entered thereon.

Was the testimony offered by the plaintiff sufficient to entitle them to have the cause submitted to the jury? The defendant contends, and such was the view of the trial court, that the evidence introduced by plaintiff was not sufficient to sustain the action. It appears that in the

58

year 1889, Charles F. Yates was engaged in the mercan-
tile business at Chadron, under the name of Yates & Co.
Plaintiffs were wholesale dealers in dry goods and notions
at St. Joseph, Mo.   Prior to the 8th day of March of that
year Yates ordered from plaintiffs, through their traveling
salesman, five bills of goods, aggregating $887.92, of which
amount $395.61 was due in sixty days and the remainder
in ninety days from date of sale.   On receipt of the orders
by plaintiff, and before the same were filled, they wrote
Yates, requesting him to send a statement of his assets and
indebtedness.   For the purpose of obtaining credit from
plaintiffs for the goods so ordered, Yates made and for-
warded to plaintiffs the following statement:

"CHADRON, NEBRASKA, March 8, 1889.

"C. F. Yates, sole owner.   Name of firm Yates & Co.,
to distinguish from Farm Loan & Insurance business.

"REAL ESTATE.

(Chadron residence property in name of wife, $4,000 00)
160 acres of land in Merrick Co., Neb., valued
   at $20 per acre................................... $3,000 00
160 acres six miles from Chadron, valued......   1,600 00
160 acres twenty-five miles from Chadron,
   valued .........................................   1,200 00
160 acres six miles from Rushville, Neb.......   1,500 00
160 acres near Gordon, Neb., valued:...........   1,500 00
Have an undivided one-half interest in Wy-
   oming 14,000 acres land, but place no value
   on same, though it will be valuable some
   day.
Personal property, stock and fixtures, invoice
   value .........................................  15,252 00
I bought this stock out and paid $5,000 cash
   and balance in real estate, and while I expect
   to get full invoice value out of stock, I place
   it at.............................................  10,000 00
     "All paid for.

"I have no bills or notes out that are due or unpaid.

Have one note out for.............................    $100  00
One note for.--....................................     250  00

"I have a note out for $2,000, secured on residence property, payable in installments extended over five years.

                                        "C. F. YATES."

Upon the receipt of the above statement by plaintiffs, and relying upon the representation of Yates as to his financial standing, the goods were immediately shipped by them to him at Chadron.   They were received by him and placed in the store.   A portion were sold at retail with other goods, until about June 14, 1889, when Yates failed, and the defendant bank took possession of the stock under a chattel mortgage executed by Yates.   On the day the goods were shipped by plaintiffs they received through the mails a remittance from Yates of $300 to apply on the purchase, but no other payments were ever made by him. There is evidence tending to show that at the time Yates gave the property statement he owned no real estate; that his stock did not exceed in value the sum of $2,600, and that his indebtedness was more than $13,000, which greatly exceeded his total assets.   In short, he was hopelessly insolvent.   The evidence tended to establish that plaintiffs were induced by the fraudulent representations so made by Yates to them to sell the goods, a portion of which are involved in this action, and that as soon as plaintiffs discovered the fraud, they rescinded the contract and replevied the goods which had not been sold.

The point is made by counsel for defendant that, as plaintiffs have not paid or tendered back to Yates the $300 paid by him, they are not entitled to rescind the contract. As a general rule, where a vendor of personal property seeks to rescind the sale on account of fraudulent representations made by the vendee, he must return, or offer to surrender, to the purchaser whatever he has received upon

it. He must place the vendee as near *in statu quo* as the circumstances will permit. The seller is likewise entitled to receive back the property sold. And when the vendee has sold a part to innocent parties, so that he cannot make complete restitution to the original vendor, the latter may retain of the consideration received by him an amount equal to the value of the property parted with by the vendee and tender the balance of the consideration. Mr. Cobbey, in his book on Law of Replevin, at section 258, says: "Where property was sold on part time and $100 paid cash, if the vendor wishes to rescind the sale for fraud he should make demand and tender back the money received, less the value of the goods disposed of by the vendee up to the time of the rescission, and less also the depreciation of the goods replevied." (See *Symns v. Benner*, 31 Neb., 597; *Schoonmaker v. Kelly*, 42 Hun [N. Y.], 299; *Crane Boot & Shoe Co. v. Trentman*, 34 Fed. Rep. [Ind.], 620.)

In *Symns v. Benner*, *supra*, the defendant in error therein, relying upon certain fraudulent representations of Symns, sold him goods to the amount of $500 on time. Subsequently $100 was paid on the purchase, but no other payments were made. The vendee had sold $47 worth of the goods. Upon the discovery of the fraud the vendor rescinded the sale, replevied the goods undisposed of, and paid into court $53. It was held that the tender was sufficient. While the evidence does not clearly indicate the exact value of the goods purchased of plaintiff, which were parted with by Yates, yet it may be fairly inferred that they exceeded $300. Upon both reason and authority we conclude that, under the circumstances of this case, plaintiffs were not bound to return the $300 paid on the goods.

It is also urged by defendant that when the sale of the goods is induced by fraudulent representations of the purchase, the seller cannot reclaim the goods as against a *bona fide* purchaser from the fraudulent vendee without

notice of the fraud.    Such is undoubtedly the law.    But under the evidence the bank is not entitled to the protection of this rule.    It claims the goods by virtue of a chattel mortgage, which the evidence shows was given to secure a pre-existing indebtedness due the bank from the mortgagee.    So far as appears this was the only consideration for the execution of the mortgage.    The right of the plaintiffs to rescind the contract and retake the property, therefore, was not defeated. (Wells on Replevin, sec. 338; *Collins v. Cooley,* 14 Atl. Rep. [N. J.,] 574; *Parr v. Woodburn,* 25 Vt., 235; *Hyde v. Ellery,* 18 Md., 496.)

The defendant claims that the petition does not state a cause of action.    It alleges, in direct and positive terms, that the plaintiffs are the owners and entitled to the immediate possession of the goods, and that defendant wrongfully detains the same.    Had the pleader stopped at that, it is conceded that the petition would have been sufficient. But it is urged that as it sets up the fraudulent representations of Yates which induced the sale of the goods and the rescission of the contract, it should have alleged facts showing their right to recover against the bank.    The petition does negative the right of the defendant to hold the goods. It avers that the bank " wrongfully detains said goods and chattels from the possession of these plaintiffs," and it is nowhere alleged that the bank claims any right, title, or interest in the goods by virtue of a chattel mortgage or otherwise.    The objections to the petition must be overruled, especially as no objection to it was made in the court below.    The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.