WAYLAND HURD vs. FRANK A. BICKFORD.

Penobscot.    Opinion December 19, 1892.

*Sales.   Fraudulent Vendee.   Rescission.   Purchaser's Transfer.*

A chattel purchased through fraud and sold by the purchaser of it in payment
of his existing debt, may be reclaimed by the original vendor on discovery
of the fraud, although the last vendee was ignorant of it.

ON EXCEPTIONS.

This was an action of trover for one horse and sleigh.
Demand was proved.   Pleadings were the general issue with
brief statement of title in defendant.   Verdict was for the
plaintiff, with special findings of value of horse and sleigh.
Defendant was a physician.

The evidence tended to show that the property was owned by
the plaintiff, who subsequently sold and delivered it with other
livery stock, to one Reuben G. Gross, and that the purchase
by said Gross was fraudulent as to plaintiff.

It also tended to show that said Gross was, at the time of
said pretended purchase indebted to the defendant for medical
services, and after said pretended purchase gave defendant his
note on time for such debt.   That after such pretended sale,
defendant purchased said horse of said Gross and gave in pay-
ment therefor said note before it was due.

It also tended to show that defendant at the time of his pur-
chase of said horse was ignorant of any fraud by Gross in his
purchase of the said livery stock of said Hurd.

The Court instructed the jury that if they found the purchase
by Gross was fraudulent as to Hurd, the defendant would not
be an innocent purchaser, and they would find the defendant
guilty and assess the damages at the value of the horse and
sleigh as they shall find it to be.

The jury found for the plaintiff and the defendant excepted.

*George W. Howe*, for plaintiff.

*Vose and McLellan*, for defendant.

Case presents but one question, was there a valuable consid-
eration passing from defendant to Gross.   Discharge of a pre-

existing debt is a valuable consideration. Defendant had a right to presume the title was in Gross. *Lee* v. *Kimball*, 45 Maine, 172; *Butters* v. *Haughwout*, 42 Ill. 18; S. C. 89 Am. Dec. 401; *Homes* v. *Smyth*, 16 Maine, 177; *Norton* v. *Waite*, 20 Maine, 175. The doctrine of the New York decisions leads to hardship and works interference with commerce.

HASKELL, J. Trover for a horse and sleigh. One Gross procured them from the plaintiff by means of fraud, being a debtor of the defendant; afterwards, Gross paid his debt with his own promissory note on time. Before the note became due, he sold the horse to the defendant, who was ignorant of the fraud, in payment of the note. No defense is shown as to the sleigh, but exception is taken to the instruction that, if the purchase by Gross was fraudulent, the defendant would not be an innocent purchaser of the horse, and could not hold title to it, although he was ignorant of the fraudulent title of Gross, his vendor.

The horse was used to pay a pre-existing debt of Gross. The payment of that debt by his own note after he purchased the horse did not change the relation of the defendant to him, from prior to subsequent creditor. The same debt existed all the time. The note was but a new evidence of it. The time of payment may have been extended, but no new debt was created, no new credit given; simply further credit for the payment of an old debt.

The doctrine in favor of innocent purchasers is, that they have a right to rely upon the apparent title of their debtors to chattels in their possession, and deal with them as if the property were really their own. So it was held in *Gilbert* v. *Hudson*, 4 Maine, 345, that chattels fraudulently purchased by a debtor, might be held on attachment, by his creditor, to the extent of an indebtedness contracted between them subsequent to the fraudulent purchase, but not for a debt contracted prior to that time. *Gilbert* v. *Hudson, supra*; *Buffington* v. *Gerrish*, 15 Mass. 156. This distinction between the rights of prior and subsequent creditors does not seem to have been always recognized.

*Jordan* v. *Parker*, 56 Maine, 557 ; *Wiggin* v. *Day*, 9 Gray, 97 ; *Atwood* v. *Dearborn*, 1 Allen, 483 ; *Thaxter* v. *Foster*, 153 Mass. 151 ; *Donaldson* v. *Farwell*, 93 U. S. 631.  But property so purchased, and sold for a valuable consideration to a *bona fide* purchaser not conusant of the fraud, can not be reclaimed. *Trott* v. *Warren*, 11 Maine, 227 ; *Neal* v. *Williams*, 18 Maine, 391 ; *Sparrow* v. *Chesley*, 19 Maine, 79 ; *Tourtellott* v. *Pollard*, 74 Maine, 418.

The discharge of an antecedent debt has always been held in our State a valuable consideration for the transfer of negotiable paper not due, so as to shut out equitable defenses. *Homes* v. *Smith*, 16 Maine, 177 ; *Norton* v. *White*, 20 Maine, 175 ; *Railroad* v. *Bank*, 102 U. S. 14.  In many jurisdictions, such transfer, in good faith, as security merely, has also been held to so operate ; *Goodwin* v. *Massachusetts Loan Co.* 152 Mass. 199 ; *Swift* v. *Tyson*, 16 Pet. 1 ; *Railroad* v. *Bank*, 102 U. S. 14.  Our decisions are to the contrary ; *Smith* v. *Bibber*, 82 Maine, 34.  Does the same rule apply to the sale or pledge of chattels ?  In *Titcomb* v. *Wood*, 38 Maine, 561, the court declares that it does not ; but suggests a *quære*, whether it should not, and decides the case upon a doctrine quite as questionable, viz., that the discharge of a thief from liability for things stolen is a present consideration and not equivalent to the payment of an antecedent debt.

The case of *Lee* v. *Kimball*, 45 Maine, 172, cited by the defendant, upon casual reading, might seem an authority in the defendant's favor, and it has been sometimes cited as such ; but, on examination, it will be found not to be.  A cargo of coal, purchased to arrive, was sold by indorsement of the bill of lading in payment of the consignee's debt.  The consignor attempted to exercise his right of stoppage *in transitu*, and the court held he could not, remarking that, as a pre-existing debt is held a valuable consideration in the transfer of negotiable paper, on principle, it would so operate in the sale of the cargo. That may be so ; but the consignor did not hold the same relation to the cargo that a vendor does to merchandise, sold by reason of frauds practiced upon him by the vendee.  In such

case, the title passes subject to the vendor's right of rescission, that, once exercised, revests the title in him. Such sale is not void, but only voidable. The consignor sold his cargo, without fraud practiced upon him. His sale, once made, irrevocably passed the title to the consignee. The sale was neither void nor voidable, and therefore, he could transfer the cargo to a *bona fide* purchaser by indorsement and delivery of the bill of lading · as effectually as by an actual delivery of the cargo. The delivery of the muniment of title was a delivery of the property and worked an executed sale, whereby the right of stoppage became barred. *Leask* v. *Scott*, 2 Q. B. 376; *Clementson* v. *G. T. Railway*, 42 Up. Can. Q. B. 273.

It should be noticed that a merchant, by the exercise of stoppage *in transitu*, never regains title to the property sold, but only the possession, that he may enforce a lien for the unpaid purchase money. The title all the while remains in the vendee. If the vendor converts the property, the vendee can maintain trover for it; and the value in excess of the price agreed to be paid, will be the measure of damages. It is a proper subject of equity jurisdiction, where the vendor's lien can best be enforced. *Phelps* v. *Comber*, 29 Ch. D. 821; *Wentworth* v. *Outhwaite*, 10 M. & W. 436; *Valpy* v. *Oakeley*, 16 Q. B. 941; *Griffiths* v. *Perry*, 1 E. & E. 680; *Schotsmans* v. *Lancashire Railway*, 2 L. R. Ch. 332; *Ludlow* v. *Bowne*, 1 Johns. 15; *Babcock* v. *Bonnell*, 80 N. Y. 244; *Stanton* v. *Eager*, 16 Pick. 467; *Mohr* v. *Railroad*, 106 Mass. 67; *Newhall* v. *Vargas*, 15 Maine, 314.

The right of a vendee, depends upon whether the re-sale was made to a purchaser, ignorant of the fraud, and for a valuable consideration. *Tourtellott* v. *Pollard*, *supra.* And a valuable consideration, in such cases, means something more than the discharge of a debt that revives, when the consideration for its discharge fails. It means the parting with some value that cannot be actually restored by operation of law, leaving the purchaser in a changed condition, so that he may lose something beside his bargain. *Barnard* v. *Campbell*, 58 N. Y. 73; *Stevens* v. *Brennan*, 79 N. Y. 258; *Hyde* v. *Ellery*, 18 Md. 496, 501; *McGraw* v. *Henry*, 83 Mich. 442; *George* v. *Kimball*, 24

Pick. 234-240. The same rule applies to chattels pledged. *Goodwin* v. *Massachusetts Loan Co. supra.*

True, the discharge of an antecedent debt, in one sense, is a valuable consideration ; but, if the title of the vendee fails, the discharge of his debt fails also, and he has lost nothing by the transaction. It is said that the vendor might pay his debt, and the vendee purchase the property with the proceeds. That is true, if the vendor have the means to do so, but all vendors are not solvent, if they were, there would be no occasion of reclaiming property fraudulently purchased by them, no occasion to rescind the sale. Other remedies would afford adequate redress. Or, if the property be reclaimed after they had sold it in payment of their existing debts, those debts could be easily collected, and no one would suffer from the transaction ; whereas, if, perchance, they are insolvent and can, by fraud, purchase property, and apply it to their old debts, so as to leave their vendors without the power of reclaiming it, they, by defrauding one man, can thereby pay the debts of another, manifestly to the shame of honest dealing and even and exact justice among men. The authorities sustain the ruling at *nisi prius.*

*Exceptions overruled.*

PETERS, C. J., VIRGIN, LIBBEY, FOSTER and WHITEHOUSE, JJ., concurred.