PHENIX IRON WORKS COMPANY V. H. C. MCEVONY.

FILED FEBRUARY 18, 1896.    No. 6112.

1. **Replevin:** RESCISSION OF SALE: FRAUD: PLEADING AND PROOF.  A plaintiff in replevin may under a petition alleging generally ownership and right of possession in himself, and a wrongful detention by defendant, prove fraud inducing a previous sale by plaintiff to defendant, and a rescission because thereof.  It is not necessary to specially plead the fraud.

2. **Sales:** RESCISSION: CHATTEL MORTGAGES.  One who takes a pledge or mortgage of personal property to secure a pre-existing debt is not entitled to protection as a *bona fide* purchaser against an action to rescind a sale of the property previously made to the pledgor or mortgagor. *Tootle v. First Nat. Bank of Chadron*, 34 Neb., 863, followed.

3. ——: ——: RETURN OF PURCHASE MONEY.  In general, when a vendor seeks to rescind a sale for fraud he must return or offer to return any portion of the purchase money which he may have received; but he need not do so when the property has been damaged by the fraudulent vendee to an amount equal to the purchase money so received.

ERROR from the district court of Holt county. Tried below before KINKAID, J.

*R. R. Dickson,* for plaintiff in error.

*H. M. Uttley, contra.*

IRVINE, C.

This was an action of replevin by the plaintiff in error against the defendant in error, to recover an engine, boiler, and other machinery.  The plaintiff based its claim on former ownership of the property, which had been parted with in pursuance of a contract of sale which the plaintiff

claimed it had been induced to enter into by
fraudulent misrepresentations. The defendant,
the sheriff of Holt county, denied plaintiff's own-
ership and right of possession, and also alleged a
sale by the plaintiff of the property to one Donald
McLean, followed by a pledge of the property to
secure a debt of $700 to one Mathews. The de-
fendant also justified under a writ of attachment
issued at the suit of the State Bank of O'Neill
against Donald McLean, and levied upon the prop-
erty subject to the lien of Mathews. The case was
tried to the court, and there was a finding and
judgment for the defendant.

A question which must be disposed of *in limine*
is that presented by the argument of the defend-
ant that the judgment was correct, regardless of
any assignments of error, for the reason that the
petition did not state a cause of action. The peti-
tion was in the ordinary form in replevin cases
where a general ownership is claimed, charging
merely, in general terms, ownership, a right to the
immediate possession of the property described,
and the wrongful detention thereof by the defend-
ant. The contention of the defendant is that inas-
much as the plaintiff based its claim on fraud, this
petition was insufficient, because not pleading the
facts constituting the fraud. The defendant, we
think, mistakes the rule. When it becomes neces-
sary to plead fraud, a general allegation of fraud
is insufficient. The facts must be specifically
pleaded; but it is not in all cases that it is neces-
sary to plead fraud, although that question may
turn out to be in issue. In ejectment a defendant
under a general denial may prove fraud in the pro-
curement of a deed under which plaintiff claims,
for the purpose of disproving plaintiff's right of

possession. (*Franklin v. Kelley*, 2 Neb., 79; *Staley v. Housel*, 35 Neb., 160.) A certain analogy exists between ejectment and replevin under the Code. One is an action to recover the possession of land; the other to recover the possession of personal property; and the pleadings in both actions depart somewhat from the general rules of Code pleading. (See as to replevin, 2 Kinkead, Code Pleading, sec. 1079.) As said in *School District v. Sh~emaker*, 5 Neb., 36, the Code takes actions of replevin out of the general rule in regard to pleadings. In *Haggard v. Wallen*, 6 Neb., 271, it was said: "A petition in replevin should state that the plaintiff is the owner of the goods sought to be recovered (or has a special property therein, stating its nature), that he is entitled to the immediate possession of such goods, and that the defendant wrongfully detains the same." Where a special ownership only is claimed, greater particularity in pleading is required. (*Curtis v. Cutler*, 7 Neb., 315; *Musser v. King*, 40 Neb., 892; *Randall v. Persons*, 42 Neb., 607; *Sharp v. Johnson*, 44 Neb., 165; *Camp v. Pollock*, 45 Neb., 771.) But from the time of the early cases cited it has always been considered that a general allegation of ownership, right of possession, and unlawful detention is sufficient, however the plaintiff may deraign his title on the trial; and the reports are full of cases where such petitions have been treated as sufficient, although the proof of the case involved an issue of fraud. That the general rule as to pleading fraud has no application to actions of replevin under the Code was held in *Sopris v. Truax*, 1 Colo., 89. In *Tootle v. First Nat. Bank of Chadron*, 34 Neb., 863, the petition, after the general allegations, pleaded the fraud specially. In discussing this the court

said that had the pleader stopped at the general allegations "it is conceded that the petition would have been sufficient." This was reaffirmed on re-hearing, 42 Neb., 237. The objection so raised by the defendant could hardly in any event go to the general sufficiency of the petition, but would rather go to the admissibility of evidence of fraud thereunder; but however raised, we hold the objection not well taken.

The defendant also contends that the petition in error contains no sufficient assignments to reach the other questions argued. This may be true in a general way, but there is an assignment that the finding was not sustained by sufficient evidence. This we may consider. Most of the facts in the case were settled by a stipulation thereof embodied in the bill of exceptions. From this it appears, among other things, that on September 18, 1890, the plaintiff sold and delivered to Donald McLean the property in controversy, $700 to be paid during the erection of the machinery, at O'Neill, and the remainder sixty days after erection, the total price being $2,888. McLean was the president of the Pacific Short Line railroad, and represented that he desired to purchase the property for said railroad, for the purpose of heating and lighting a roundhouse at O'Neill; that he had authority to purchase such property and bind the railroad for the payment; that the railroad was solvent and on a prosperous and solid financial basis. Relying on these representations the plaintiff sold the property. In fact McLean had no authority to purchase for the railroad. He was not acting for the railroad, but for himself. The property was not desired for heating and lighting the roundhouse, but for carrying

on an electric system owned by McLean for light-
ing the city of O'Neill, and the railroad was insol-
vent. The plaintiff had no knowledge of the
falsity of the representations until shortly before
this action was instituted, and after all interven-
ing rights, if any, accrued. The plaintiff put in
the machinery according to its contract. About
January 1, 1891, the plaintiff received the pay-
ment of $700 from McLean, McLean borrowing
the money from the State Bank of O'Neill, the
plaintiff knowing that fact, but not knowing that
the loan was a personal one of McLean's, and the
payment not that of the railroad. McLean then
entered into possession of the property with the
consent of the plaintiff. In December, 1890,
McLean made to Mathews his note for $2,000.
This note was purchased by the bank, which, on
December 22, 1891, commenced a suit against
McLean thereon and caused the property in con-
troversy to be attached. It was further stipulated
that at the time of bringing the action the prop-
erty had been damaged while in the possession of
McLean to the amount of $900. In addition to the
foregoing facts, it appears from parol testimony,
and in part by the stipulation, that after the bank
had lent McLean the $700 to make the first pay-
ment on the machinery, one of its officers insisted
upon security therefor, and some kind of a writ-
ing, not disclosed by the evidence, was prepared,
whereby the property was pledged to Mathews,
the president of the bank, to secure the loan; and
there was also some kind of a constructive deliv-
ery of the property by McLean to Mathews.
There is much controversy in the briefs as to this
transaction; but we do not deem its precise
nature material, because the same result must be

reached even though there was a complete pledge or mortgage. There is no room for doubt that under these facts a case of fraud was established which would have entitled.the plaintiff to recover the property from McLean. McLean procured it on the representation that he was acting on behalf of a solvent corporation purchasing the property for a particular purpose, whereas he was purchasing for himself for another purpose. The corporation was not bound, and was insolvent even if it had been bound. It may be added, also, that there is sufficient to show McLean's insolvency. It has been several times held, directly or by plain inference, that one who takes personal property as security for a pre-existing debt is not a *bona fide* purchaser so as to be protected from the rescission of a contract whereby such property was sold to the pledgor or mortgagor. (*Symns v. Benner*, 31 Neb., 593; *Tootle v. First Nat. Bank of Chadron*, 34 Neb., 863, 42 Neb., 237; *Work v. Jacobs*, 35 Neb., 772.) The case of *Tootle v. First Nat. Bank of Chadron* is directly in point. The bank, when it lent the money, did not take the property as security. It was only after the loan had been perfected that it sought security. The interval of time was only a day, but that makes no difference. The bank did not·part with the money on the faith of this property as security, and the pledge, mortgage, or whatever it was, to Mathews was one to secure a pre-existing debt. The plaintiff has made no offer to return the $700 received by it; but it is stipulated that the property was damaged to the amount of $900 while in McLean's possession. A question is thus presented as to whether under the circumstances it was necessary to offer to return the money. We think not. The rule that one, in

order to rescind a contract procured by fraud, must return or offer to return what he has received thereunder, is not one of universal application. In *First Nat. Bank of Barnesville, Ohio, v. Yocum,* 11 Neb., 328, the rule was stated that in such case a party seeking to rescind must put the subject-matter of the contract as near *in statu quo* as may be under the circumstances; or upon the trial must give a reason why the same could not be reasonably done. It is well established that no offer to return is necessary when the party guilty of fraud has rendered a return impossible; and it would seem to be equally true when the party guilty of fraud has rendered a return unjust to the other party. In *Symns v. Benner, supra,* $100 had been paid on the purchase money; but goods to the value of $47 had been sold. It was held that an offer to repay $53 after the value of the sold goods had been ascertained was sufficient; and in *Tootle v. First Nat. Bank of Chadron, supra,* the same doctrine was reaffirmed. If, then, McLean had sold a portion of this machinery to the value of $900, the remainder might be replevied without offering to return the $700 received. We can see no difference in principle between the sale of a portion of the property and its deterioration in value by damage or use while in the vendee's possession. Under our view of the law, as above stated, the evidence did not sustain the finding of the court.

REVERSED AND REMANDED.