FRIEND BROS. CLOTHING COMPANY, Appellant, vs. HULBERT, Respondent.

*November 22, 1897 — January 11, 1898.*

*Sale of chattels: Rescission: Return of consideration: Application of payments.*

1. Although a vendor of chattels must ordinarily return or offer to return the consideration received, so as to put the buyer *in statu quo,* before he can rescind the sale on the ground of fraud, the rule requiring such restoration is, nevertheless, equitable in its nature, and does not require the doing of unreasonable or impossible things, which do not tend to secure equity in the particular transaction.

2. Where sales are made upon credit at different times through a period of several months, each sale will be treated as a separate and distinct transaction, for the purpose of the rule requiring a return of the consideration received as a condition of rescinding the sale.

3. Where the payments made by the purchaser in such a case did not exceed the amount of the first sale, each payment should be applied upon that purchase, unless at the time it was made it was specifically applied by the purchaser upon some other purchase.

APPEAL from a judgment of the circuit court for Sauk county: R. G. SIEBECKER, Circuit Judge. *Reversed.*

*Herman Grotophorst* and *Sam'l Rosendale,* for the appellant.

*R. D. Evans,* for the respondent, contended, *inter alia,* that the modification of the rule requiring a vendor who elects to rescind a contract of sale to rescind *in toto,* adopted in Rhode Island and Nebraska (*Sisson, Potter & Co. v. Hill,* 18 R. I. 212; *Syms v. Benner,* 31 Neb. 593), by which equitable principles have been applied in replevin, is contrary to the great weight of authority. *Sisson, Potter & Co. v. Hill,* 21 L. R. A. 206, note; *Cobb v. Hatfield,* 46 N. Y. (Ann. ed.), 534, note; *Gould v. Cayuga Co. Nat. Bank,* 86 N. Y. 75.

CASSODAY, C. J. The complaint alleges, substantially, that the plaintiff is a corporation created and existing under the laws of this state; that Fred, Barney, and Otto Katzky were doing business as copartners, under the firm name of Fred Katzky & Bros., at Baraboo; that March 29, 1895, and at various times after that date and up to November 5, 1895, Katzky Bros. stated to representatives of the plaintiff, and to various mercantile agencies which were established for the purpose of obtaining statements and information from merchants and others desiring to obtain goods on credit, as a basis of such credit, that they (Katzky Bros.) were solvent, and worth $10,000 over and above all their debts and liabilities, and in property not by law exempt from execution; that they knew such statements would come to the knowledge of the plaintiff; that June 14, 1895, Katzky Bros. corroborated such statements, and claimed and represented to the plaintiff that they then were, as they had theretofore

Friend Bros. Clothing Co. vs. Hulbert.

been, wholly solvent — they well knowing at the time that the previous statements so made by them to the mercantile agencies had come to the knowledge of the plaintiff; that relying upon the truth of such statements, and believing them to be true, and on the faith thereof, and trusting therein, the plaintiff, between March 29 and November 5, 1895, sold and delivered to Katzky Bros. ready-made clothing, at various times between said dates, upon credit, to the amount and value of $9,349.76, of which Katzky Bros. had paid no part, except the sum of $3,752.76, leaving due, unpaid, and owing to the plaintiff therefor the sum of $5,597; that such statements so made by Katzky Bros. were false and untrue, and by them known to be so when made, and that they were so made for the purpose of cheating and defrauding the plaintiff out of the value of the said goods or the greater part thereof, and that the plaintiff thereby was cheated and defrauded; that said Katzky Bros., during all said time, were insolvent; that, upon knowledge of such fraud coming to the plaintiff, it elected to, and did, rescind the sales, and demanded a return of the property, which was refused; that thereupon, and on December 20, 1895, the plaintiff commenced this action to recover the property described, or $5,597, as the value thereof, in case a delivery thereof could not be had, together with damages and costs.

The defendant, as sheriff, justified the seizure of the goods December 16, 1895, under and by virtue of an execution against F. Katzky Bros., and in favor of Marcus J. Katzky, and that he held possession thereof thereunder, and also under and by virtue of two certain attachments against F. Katzky Bros.,— one in favor of J. Emil Dryfoos, and the other in favor of the Straw-Ellsworth Manufacturing Company.

At the close of the testimony, the court granted a nonsuit on the sole ground that the plaintiff had not returned, nor offered to return, the portion of the purchase money paid to

the plaintiff by F. Katzky Bros. From the judgment entered thereon accordingly the plaintiff brings this appeal.

In view of the rulings of the trial court mentioned, and for the purpose of this appeal, we must assume that there was sufficient evidence to take the case to the jury on the questions of fraud and false representations alleged in the complaint. The first purchase was made March 29, 1895, and amounted to $4,133.20. The amount purchased from that time, to and including August 1, 1895, was only $222.85. The amount purchased in August was $1,964.50. The amount purchased in September was $2,171, and the amount purchased after that time was $858.25, making a total of $9,349.76. The total amount paid and credited during the time (including $244.50 goods taken back, and $416 discount) was only $3,752.50; that is to say, $380.70 less than the first purchase of March 29, 1895. The cash payments were as follows: April 20, 1895, $2,000; June 25, 1895, $800; and November 5, 1895, $500,— making the whole amount of cash paid $3,300. There is evidence tending to prove that the sales of Katzky Bros., during the time, of the goods so purchased of the plaintiff, were $6,674.85; that the goods replevied by the plaintiff, at cost price, were about $6,000; and that their value was from $3,500 to $3,848.75. It is stipulated that the special interest which the defendant, as sheriff, claims in the goods replevied, was $3,445, and their value for all purposes, $4,000. The real question for determination is whether the plaintiff is barred from recovering any portion of the goods in question or their value, by reason of its failure to return or offer to return the $3,300 cash so received. If such are the facts, then it is obvious that, during the time mentioned, Katzky Bros. must have sold of the goods so purchased of the plaintiff to the value of, at least, $3,349.26. Beyond question, a fraudulent sale, although voidable, is not absolutely void. So, as a general rule, it is well established that a party who seeks to rescind a contract

of sale on the ground of fraud must do so *in toto;* that he cannot affirm it in part, and disaffirm it as to the residue; and hence, in order to rescind in such a case, the vendor must return, or offer to return, the consideration received. *Weed v. Page,* 7 Wis. 503; *Hendricks v. Goodrich,* 15 Wis. 679; *Hollenback v. Shoyer,* 16 Wis. 499; *Grant v. Law,* 29 Wis. 99; *Hyslip v. French,* 52 Wis. 516, 517.

As indicated, we must assume, for the purposes of this case, that each of the several sales made by the plaintiff to Katzky Bros., between April 12, 1895, and November 5, 1895, inclusive, was made upon false representations. While the representations upon which the plaintiff claims to have given credit and made the several sales mentioned are the same, or quite similar, yet the plaintiff seems to be fully justified in contending that each sale so made was a separate and independent transaction. That being so, it is manifest that if there was any sale after the first, upon which Katzky Bros. made no payment, then as to that sale the plaintiff might, in case the evidence should warrant, recover without returning or offering to return the payment or payments received on other sales. Since the aggregate amount paid by Katzky Bros. was less than the amount of their first purchase, we perceive no good reason why all such payments should not be applied upon such first purchase, unless it should be made to appear that such payments, or some of them, were specifically applied by Katzky Bros. upon some other purchase at the time of making such payment. The several sales should be treated as separate and independent transactions. *Costigan v. Hawkins,* 22 Wis. 79; *Manning v. Humphreys,* 3 E. D. Smith, 218; *Miner v. Bradley,* 22 Pick. 457.

The rule requiring such restoration is equitable in its nature, and hence unreasonable or impossible things, which do not tend to secure equity in the particular transaction, are not required. Thus: " A firm of retail dealers by fraudulent representations induced plaintiffs, wholesale dealers, to

sell them goods. Goods were sold at various dates during the succeeding six months. For about two thirds of the goods notes were given. Some of the earlier notes were paid, but the remaining notes and the book account were not paid. The purchasers of the goods confessed judgments to other creditors, and plaintiffs, having identified certain of the goods levied upon, notified the sheriff that they had rescinded the contract of sale and claimed the goods. On an interpleader, the evidence tended to show that the purchasers had received from customers who had purchased some of the goods more than the amount of the notes paid to plaintiffs. *Held*, that plaintiffs were not bound to refund the amounts of the notes paid to them, and that a verdict and judgment in their favor should be sustained." *Sloane v. Shiffer*, 156 Pa. St. 59. In another case in the same court it has been held that " where goods are sold under fraudulent representations, and are all delivered under one contract of sale, the vendors may rescind the contract without tendering to the vendee the portion of the purchase money paid, if it appears that the value of the goods claimed does not exceed the balance due the vendors." *Schofield v. Shiffer*, 156 Pa. St. 66. To the same effect: *Tootle v. First Nat. Bank*, 34 Neb. 863; *Pearse v. Pettis*, 47 Barb. 276; *Schoonmaker v. Kelly*, 42 Hun, 299; *Montgomery v. Pickering*, 116 Mass. 227; *Sisson, Potter & Co. v. Hill*, 18 R. I. 212. So, it has been held that where the vendee has, by his own wrongful act, put it out of the power of the vendor to place him in *statu quo*, the vendor may rescind the sale without doing so. *Masson v. Bovet*, 1 Denio, 69; *Hammond v. Pennock*, 61 N. Y. 145; *Guckenheimer v. Angevine*, 81 N. Y. 394; *Wilson v. Challis*, 39 Ill. App. 227; *Phenix Iron Works Co. v. McEvony*, 47 Neb. 228; *Warner v. Vallily*, 13 R. I. 483; *Lee v. Simmons*, 65 Wis. 523. So, it has been held that the return of the vendee's note taken by the vendor is not necessarily a condition precedent to such rescission. *Hyland v.*

*Bohn Mfg. Co.* 92 Wis. 157; *Nichols v. Michael,* 23 N. Y. 264; *Duval v. Mowry,* 6 R. I. 479; *Manning v. Albee,* 11 Allen, 520.

We have purposely refrained from discussing the facts, so as not to embarrass a new trial.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.