(August 2, 1924.)

# THE VAN AUSDLE HOFFMAN PIANO COMPANY, Appellant, v. C. L. JAIN, Respondent.

[228 Pac. 342.]

Conditional Sale Contract—Washington Recording Act—Statute Does not Protect Existing Creditor of Vendee—Rights of Pledgee Where Title to Property Pledged not Acquired by Pledgor.

1. Under the Washington statute providing that a conditional sale contract be recorded (Rem. Comp. Stats., sec. 3790), as between the parties to the contract, the failure to record does not affect its validity, and a creditor in order to take advantage of such failure to record must show that he is within one of the classes which the statute protects. The statute does not protect creditors existing at the time the conditional sale was made.

2. *Held*, that the conditional sale contract in question in this case is valid as between the parties in the state of Washington, and also valid against defendant, since he was an existing creditor at the date of the sale.

3. *Held*, that title never passed to the vendee under the conditional sale contract.

4. Where title has never passed to the vendee under a conditional sale contract, but such vendee pledged the property to a creditor as security for a debt, the creditor acquired no right of possession as against the vendor, and the withholding of possession from the vendor is wrongful.

APPEAL from the District Court of the Second Judicial District, for Latah County. Hon. Edgar C. Steele, Judge.

Action in claim and delivery to recover possession of a piano sold under a conditional sale contract and pledged by vendee as security for a pre-existing debt. Judgment for defendant. *Reversed.*

A. H. Oversmith, for Appellant.

Recording laws have no extraterritorial force. (*Montgomery v. Wright*, 8 Mich. 143.)

Title to movable property (with certain exceptions not applicable to the facts in the case at bar) is determined by the

law of the state where the property is situated. (*Harrison v. Sterrey*, 5 Cranch (U. S.), 588, 3 L. ed. 104; *Aultman Machinery Co. v. Kennedy*, 114 Iowa, 444, 83 Am. St. 373, 87 N. W. 435; *Cronan v. Fox*, 50 N. J. L. 417, 14 Atl. 119; *Pyeatt v. Powell*, 51 Fed. 551, 2 C. C. A. 367; *Potter Mfg. Co. v. Arthur*, 220 Fed. 843, Ann. Cas. 1916A, 1268, 136 C. C. A. 589; *Pulaski M. Co. v. Haley*, 187 Ala. 533, Ann. Cas. 1916A, 877, 65 So. 783; footnote, 64 L. R. A. 453; Wharton on Conflict of Laws, par. 355b; *Baldwin v. Hill*, 4 Kan. App. 168, 46 Pac. 329.)

The laws of the state where the property is situated govern, and the question as to whether or not a conditional vendor has complied with the laws of the state where the contract was made to protect his title against purchasers of the vendee is immaterial. (*Weinstein v. Freyer*, 93 Ala. 257, 9 So. 285, 12 L. R. A. 700; *Studebaker Bros. v. Mau*, 14 Wyo. 68, 82 Pac. 2; *Lathe v. Schoff*, 60 N. H. 34.)

If property is sold under a conditional sale contract where recording of contracts is necessary and the property is then removed to a state where it is unnecessary to record such contracts, the conditional vendor's title will be protected in the latter state. (*Weinstein v. Freyer, supra; Marvin Safe Co. v. Norton*, 48 N. J. L. 410, 57 Am. Rep. 566, 7 Atl. 418.)

Contracts should be construed according to the laws which the parties either expressly or presumptively incorporated into their contract. (*Re St. Paul & K. C. Grain Co.*, 89 Minn. 98, 99 Am. St. 549, 94 N. W. 218; *Pritchard v. Norton*, 106 U. S. 124, 1 Sup. Ct. 102, 27 L. ed. 104; *Pinney v. Nelson*, 183 U. S. 144, 22 Sup. Ct. 52, 46 L. ed. 125.)

Even at common law the *situs* of the property will govern as against the law of the place of residence of the owner of the property. (Dicey on Domicile. Rule 57, p. 266.)

C. J. Orland, for Respondent.

Where parties enter into a contract and by its terms fix the state or country under which the same is to be construed, the courts will determine the rights of the parties, under the laws of the state which they have agreed upon as

governing the contract, not only as to its construction but as to its inherent validity. (*Strawbridge v. Robinson*, 10 Ill. 470, 50 Am. Dec. 420; *McAllister v. Smith*, 17 Ill. 328, 65 Am. Dec. 651; *Mittenthal v. Musscagni*, 183 Mass. 19, 97 Am. St. 404, 66 N. E. 425, 60 L. R. A. 812; 13 C. J., sec. 19; Remington's Comp. Stats. of Washington, 1922 ed., sec. 3790.)

A conditional sale contract of personal property is void and unenforceable against a third party who comes within the provisions of the Washington statute, unless the instrument or memorandum is filed within ten days from the taking possession by the purchaser, and a pledgee, under the law at the time of the making of this contract, was one of the parties protected. (*American Multigraph Sales Co. v. Jones*, 58 Wash. 619, 109 Pac. 108; *Brady v. Bell*, 94 Wash. 496, 162 Pac. 865; *Springer v. Ayer*, 50 Wash. 642, 97 Pac. 777; *Eisenberg v. Nichols*, 22 Wash. 70, 79 Am. St. 917, 60 Pac. 124; *Chilberg v. Smith*, 174 Fed. 805, 98 C. C. A. 513.)

When a chattel is sold under a contract executed in another state, whereby vendor retains the legal title until the price is paid, the laws of the state in which the contract is made will determine the rights of the parties. (*In re Hager*, 166 Fed. 972; *Barret v. Kelley*, 66 Vt. 515, 44 Am. St. 862, 29 Atl. 809.)

The lien claimed herein exists, if at all, by virtue of the laws of Washington, both by reason of its being made there and on account of the contract so providing, by the agreement of the parties to it, and if the lien is not valid under the laws of Washington, it is not valid in any other state. (*Yund v. First Nat. Bank*, 14 N. Y. 81, 82 Pac. 6; *Smith v. Consolidated Wagon etc. Co.*, 30 Ida. 148, 163 Pac. 609.)

The courts universally require, in enforcing liens, under contracts made in other states, under the rule of comity, that such liens be valid in the state of their execution, and be recorded if by the laws of such state it be required. (*Shapard v. Hynes*, 104 Fed. 452, 45 C. C. A. 271, 52 L. R. A. 675; *Kanaga v. Taylor*, 7 Ohio, 134, 70 Am. Dec. 62; *Ord Nat. Bank v. Massey*, 48 Kan. 762, 30 Pac. 124,

17 L. R. A. 127; *Handley v. Harris,* 48 Kan. 606, 30 Am. St. 322, 29 Pac. 1145, 17 L. R. A. 703; *Nichols v. Mase,* 94 N. Y. 162.)

JOHNSON, District Judge.—This is an action in claim and delivery, wherein the appellant sought to recover possession of a piano sold by appellant to one J. A. Mercer under a conditional sale contract. The respondent denied that appellant was the owner or entitled to possession of the piano and as a further and separate defense attempted to justify his possession by alleging in substance that the said J. A. Mercer transferred and delivered possession of the piano as a pledge and as security for the payment to the respondent of the sum of $750 loaned by respondent to the said J. A. Mercer, and he further alleged that appellant had not complied with the laws of the state of Washington governing the recording of conditional sale contracts. The case was tried before the court without a jury. Under the issues the only question to be determined is whether the appellant is entitled to the possession of the piano.

I. R. Van Ausdle, a member of the appellant company, testified that he negotiated with Mercer in Moscow, Idaho, on March 25, 1920, and that the contract was signed in Moscow and on the same day the piano was delivered to a transfer company for shipment from Spokane to Moscow. No further payment was made than is stated in the contract.

J. A. Mercer (colored) testified that he signed the contract at Moscow and received the piano at Moscow, Idaho.

C. L. Jain, respondent, testified that Mercer was a porter in his barber-shop; that he worked for Jain from May, 1919, to a short time after March 25, 1920; that Mercer wanted to borrow money of him to purchase oil stocks and put up the stock as security for the money. He thought that at this time he loaned him $350 and that Mercer then wanted more money but that he refused because he wanted more security. Mercer had previously talked to him about owning a piano in Spokane, and Mercer wanted to know if he would take the piano as security for more money. After Mer-

cer had described the piano, Jain loaned him the money and a few days thereafter Jain asked him about the piano and why it was not being shipped.  A few days elapsed and no piano showed up, and so "I asked him one morning why this piano wasn't coming, and he said he had had information from Spokane that a dray company in transferring this piano had dropped it and ruined it.  I says, 'Is that dray company responsible?'  'Yes,' he says, 'they are.'  'Well,' I says, 'you can either make them get you another piano or pay for this one.'  'Yes,' he said, he would look after it. In a few days more, I can't tell how long a time, he said the dray company had purchased a new piano for him and would ship it and should be here the following Thursday, or some time the following week.  The piano arrived, as he said it would; a new piano arrived at the Inland depot, and he and Mr. Williamson brought the piano and placed it in my house as security."  He further testified that he had sold some of the stock and applied it on the note.  That he had had a note signed by Mercer which he returned to Mercer when the renewal note introduced in evidence was executed later.  That he never made any effort to find out whether or not Mercer owned a piano.  He had Mercer's "word for it that he had a piano," and he never asked Mercer if the piano was paid for.  That all the money was loaned to Mercer before the piano came.

Mercer further testified that when he first started borrowing money from Jain the latter had no security whatever and did not ask for any; that after he had borrowed the first amount he got money from Mr. Jain three times.  The last time Jain demanded Mascot Oil Refining stock, and that Mercer was not able to give it because attorneys in Spokane had it for debts that Mercer owed.  He owed Jain and he turned over other stock.  When asked about conversation with Jain, he testified as follows: "I was telling—around a barber-shop they are talking, but this conversation came up about a piano, and I remember a conversation about a drayman breaking a piano; but that was broke when I was a soldier at Fort Wright. . . . . That is all I know about it,

was a piano from Fort Wright to Honolulu, the company I was a soldier in, and the transfer company dropped a piano, and furnished a new one, Company L of Honolulu, they had been transferred from Fort Wright.'' He further testified that he was discharged from the army in 1913; that Jain demanded no security and that Mercer said to Jain that he would leave the piano in his care when the piano got there; that Jain told him that the piano would be safe; that the piano that was smashed belonged to the Army company and he had no interest in the piano except as a soldier of the United States.

The checks for the money advanced by Jain to Mercer show the following dates and amounts: Dec. 17, 1919, $350; Dec. 30, 1919, $150; Jan. 9, 1920, $350; or a total of $850. The conditional sales contract is dated March 25, 1920, or about two and one-half months after the last money was loaned by Jain to Mercer.

Summing up the testimony and viewing it in its most liberal aspect, it is to the effect that at the time the respondent loaned the money to Mercer the said Mercer did not own a piano, nor had he even negotiated for the purchase of a piano, and did not enter into a contract for the purchase of a piano for over two months after the respondent had loaned the last amount to Mercer.

Upon that state of facts, Mercer may have obtained money under false pretenses from respondent, but it cannot be claimed that he used any piano belonging to the appellant as a means of obtaining the loan from respondent. If it be assumed that Mercer agreed to pledge a piano, the only piano referred to that was to be pledged was one that belonged to a company of the United States army, which piano had been destroyed prior to 1913, or some seven years before the loan.

There is no evidence that any agreement was made to pledge a piano on or after March 25, 1920, the date of its purchase from appellant.

Respondent contends that notwithstanding these facts he can now hold the piano purchased under a conditional sales

contract by Mercer from the appellant, but which piano has not been paid for nor the title to which ever passed to Mercer. This contention is based upon the fact that the conditional sales contract between appellant and Mercer was not filed in the state of Washington as required by the law of that state. The contract, however, was made in Idaho, and called for the delivery of the piano in Idaho, which piano was immediately delivered in Idaho to a resident of Idaho. The laws of Idaho do not require a conditional sales contract for a musical instrument to be recorded. The statute of Washington set forth in the respondent's answer reads as follows: "That all conditional sales of personal property, or leases thereof, containing a conditional right to purchaser, when the property is placed in the possession of the vendee, shall be absolute as to all *bona fide* purchasers, pledgees, mortgagees, encumbrancers and *subsequent creditors*, whether or not such creditors have or claim a lien upon such property, unless within ten days after the taking of possession by the vendee a memorandum of such sale, stating its terms and conditions and signed by the vendor and vendeee, *shall be filed* in the auditor's office of the county wherein, at the date of the vendee's taking possession of the property, *the vendee resides.*"

In this case the vendee resides at Moscow, Idaho, at the date of the vendee's taking possession of the property. The filing of the contract in Spokane, Washington, would not be a compliance with this statute because the vendee did not reside in Spokane. Under this statute it is wholly immaterial where the vendor resides. The statute is clearly intended for the protection of parties dealing with the vendee by reason of his having possession of the property. This is shown by the clause making the statute apply only to subsequent creditors. At the date of the sale the respondent was an existing creditor, and the only right he now asserts to the property was as pledgee to secure the indebtedness existing when the conditional sales contract was entered into.

There is practically but one question involved in this appeal and that is what is the effect of appellant's failure to

have the conditional sales contract filed in Spokane, Spokane county, Washington. The lower court held that this failure to file the contract in Washington defeated appellant's right to recover possession in Idaho, and respondent now contends that the contract is void in Washington. Hence it becomes of the greatest importance in solving this question to ascertain the views of the supreme court of Washington.

That court in the case of *First Nat. Bank of Everett v. Wilcox,* 72 Wash. 473, 130 Pac. 756, 131 Pac. 203, held: "Under Rem. & Bal. Code, sec. 3670, providing that conditional sales of personal property accompanied by delivery shall be absolute as to subsequent creditors, unless a memorandum of the sale be filed in the county where the buyer resides, a conditional sale contract to be effective as to creditors of a corporation buyer must be filed in the county specified in the articles of incorporation as the principal place of business of the buyer, and where it maintains its head office, and it is not sufficient that it be filed in another county where the buyer's mill is located, and where it mainly keeps and sells the products of its mill; the place designated in the charter of a local corporation as its principal office or place of business being the residence of such corporation."

In the case of *Malmo v. Washington etc. Fertilizing Co.,* 79 Wash. 534, 140 Pac. 569, L. R. A. 1917C, 440, the supreme court of Washington again announced the law of that state as follows: "The residence of a corporation, within Rem. & Bal. Code, sec. 3670, requiring filing of a contract of conditional sale in the county where the buyer resides, is where it has its principal place of business." "As between the immediate parties to a conditional sale contract, their rights are not disturbed by failure to file it, as required by Rem. & Bal. Code, sec. 3670, to protect the seller against purchasers from and creditors of the buyer." " 'Creditors,' within Rem. & Bal. Code, sec. 3670, making absolute, as to subsequent good faith creditors, a conditional sale contract, where the property is placed in the buyer's possession, unless filed as provided, are those only who have ac-

quired some kind of lien, and do not include general unsecured creditors extending credit without knowledge of the delivery or possession of the property.''

Counsel for respondent contends that the conditional sales contract is void as against a third party in the state of Washington and cites a number of Washington cases which are claimed to support his contentions, but in each of these cases the third party was a ''subsequent creditor,'' while the respondent herein is an ''existing creditor.'' The most that can possibly be claimed, as shown by the evidence, is that the piano was received by the respondent as security for a pre-existing debt. We will, therefore, review the law on that question.

In the first Washington case cited by respondent in support of his position, *American Multigraph Sales Co. v. Jones*, 58 Wash. 619, 109 Pac. 108, the court said: ''In other words, the bill of sale statute (sec. 5291) was designed to protect existing creditors, while the conditional sale statute is designed to protect subsequent creditors.''

The last expression of the supreme court of Washington that we have been able to find on this point, *Bornstein v. Allen*, 127 Wash. 314, 316, 220 Pac. 801, 802, is as follows: ''The first attack upon the respondent's rights arises from the failure to file the conditional sale contract under section 3790, Rem. Comp. Stats. As between the parties to the contract, the failure to record did not affect its validity, and the appellants, in order to take advantage of its lack of record, must show that they are within one of the classes which the statute protects. The statute does not protect creditors existing at the time the conditional sale was made (citing authorities). And if the sale was made on June 30, 1920, and the appellants' mortgage was for money lent on June 19, 1920, the appellants can derive no benefit under the statute by reason of the fact that the respondent's conditional sale contract was not placed of record.''

The conditional sale contract herein is therefore valid between the parties in the state of Washington and valid as against respondent as well, since he was an existing creditor

at the date of the sale. The last item of the indebtedness from the vendee to him was over two months prior to the sale. The title of the piano has never passed from appellant to Mercer. Mercer had no title to convey.

The general rule of the common law has always been that a man who has no authority to sell cannot, by making a sale, transfer a greater title than he has. The supreme court of Oregon in the case of *Velsian v. Lewis,* 15 Or. 539, 3 Am. St. 184, 16 Pac. 631, reviews at great length the various holdings of the courts relative to the possession and sale of personal property.

The respondent in this case is attempting to take the property of appellant and apply it on the debt of Mercer to him.

The Missouri court of appeals, in the case of *Conrad v. Fisher,* 37 Mo. App. 352, 8 L. R. A. 147, used language which aptly expresses our view as to the principles of law governing the facts in this case. "It does not rest upon any strictly logical basis. It has been the outgrowth of a struggle for justice. It is founded in the obvious conception of justice, that one man's goods ought not to be applied to the payment of another man's debts."

The supreme court of Maine in the case of *Hurd v. Bickford,* 85 Me. 217, 135 Am. St. 353, 27 Atl. 107, in closing their decision, said: "True, the discharge of an antecedent debt, in one sense, is a valuable consideration; but if the title of the vendee fails, the discharge of his debt fails also, and he has lost nothing by the transaction . . . . if perchance, they are insolvent and can, by fraud, purchase property, and apply it to their old debts, so as to leave their vendors without the power of reclaiming it, they, by defrauding one man, can therefore pay the debts of another, manifestly to the shame of honest dealing and even and exact justice among men."

Nebraska has held that one who takes personal property as security for a pre-existing debt is not a *bona fide* purchaser so as to be protected from the rescission of a contract whereby such property was sold to the pledgor or mortgagor.

(See *Phenix Iron Works Co. v. McEvony,* 47 Neb. 228, 53 Am. St. 527, 66 N. W. 290.)

The supreme court of the United States in the case of *People's Sav. Bank v. Bates,* 120 U. S. 556, 7 Sup. Ct. 679, 30 L. ed. 754, announced the rule, as shown by the syllabus, that "The words 'Mortgagee in good faith,' as used in said statutes, mean the same thing as 'mortgagee for a valuable consideration without notice,'" and that "Where a second mortgage, although first recorded, was given merely as collateral security for a pre-existing indebtedness, the prior mortgage confers the superior right."

The supreme court of Alabama in the case of *Weinstein v. Freyer,* 93 Ala. 257, 9 So. 285, 12 L. R. A. 700, held, as appears by the syllabus, that "The validity of the title acquired by a purchaser of personal property from one who obtained it under a conditional sale reserving title in the vendor, made in another state where the sale was valid and from which the property was removed before the price was paid, must be determined by the laws of the state where the second sale is made, at least if that is the domicile of the parties and the *situs* of the property; and the question whether or not the conditional vendor has complied with the requirements made necessary by the law of the state where his contract was made to keep his title good against *bona fide* purchasers from his vendee is therefore immaterial."

The supreme court of New Jersey in the case of *Knowles Loom Works v. Vacher,* 57 N. J. L. 490, 493, 31 Atl. 306, 307, 33 L. R. A. 305–310, used the following language:

"The *situs* of the property, and not the *lex loci contractus,* determines the validity of such sales. The contract in this case was made in New York, but the property was to be delivered, and was delivered to, and held by the purchaser in this state. Great contention and uncertainty as to the title to personal property would be produced if purchasers and mortgagees were bound to ascertain whether the vendor or mortgagor acquired title in another state before they could contract with safety in reference to it. Judicial decision in this state has been hostile to such an interpretation

of the law. (*Marvin Safe Co. v. Norton,* 48 N. J. L. 410, 57 Am. Rep., 566, 7 Atl. 418.) Where the *situs* of personal property is in this state, it is subject to our statutory provisions in the adjudications regarding it in our own courts, in a suit to which a citizen of this state is a party. (Citing authorities.) 'No one can seriously doubt that it is competent for any state to adopt such a rule in its own legislation, since it has perfect jurisdiction over all property, personal as well as real, within its own territorial limits. Nor can such a rule, made for the benefit of innocent purchasers and grantors, be deemed justly open to reproach of being founded in a narrow or selfish policy.' (Story, Confl. L., sec. 390.) It seems clear that the New Jersey statute must dominate this controversy.''

The supreme court of Arkansas in the case of *Public Parks Amusement Co. v. Embree-McLean Carriage Co.,* 64 Ark. 29, 40 S. W. 582, held that:

''Though a sale of chattels in Missouri, with reservation of title in seller till payment of price, is void as to subsequent *bona fide* purchasers, unless evidenced by a writing, acknowledged and recorded, it is valid between the parties; and if the purchaser brings the property into Arkansas, and conveys it to a third person, the law of the latter state governs the conveyance, and such person acquired no title as against the original seller, though the original contract was not recorded.''

This court, in the case of *Mark Means Transfer Co. v. Mackinzie,* 9 Ida. 165–173, 73 Pac. 135, quoted with approval the language of the supreme court of the United States in *Harkness v. Russell,* 118 U. S. 663, 7 Sup. Ct. 51, 30 L. ed. 285:

''It is only necessary to add that there is nothing either in the statute or adjudged law of Idaho to prevent in this case the operation of the general rule, which we consider to be established by overwhelming authority, namely, that in the absence of fraud an agreement for a conditional sale is good and valid as well against third persons as against the parties to the transaction; and the further rule that a

bailee of personal property cannot convey the title or subject it to execution for his own debts until the condition on which the agreement to sell was made has been performed.''

Respondent never acquired a right to the possession of the piano by virtue of the pledge from Mercer, and the withholding of its possession from appellant was therefore wrongful and without authority in fact or law. The judgment is reversed and cause remanded, with directions to the trial court to make findings and enter judgment in accordance with the views herein expressed. Costs awarded to appellant.

McCarthy, C. J., and Budge and William A. Lee, JJ., concur.

Wm. E. Lee, J., being disqualified, took no part.