GAY, Assignee, Respondent, vs. D. M. OSBORNE & COMPANY, Appellant.

*March 20 — April 4, 1899.*

*Agency: Conversion: Settlement: Fraud: Rescission in part: Restoration of ·party to former situation.*

1. An agent, employed to sell goods on commission for a stated period, at the end thereof pretended to exhibit and account for all unsold goods, thereby showing a considerable shortage in his accounts, representing, apparently, property sold and the proceeds converted by such agent to his own use, and then gave a note and mortgage to his principal for a part of such shortage. The principal thereafter discovered other unsold goods in the possession or under the control of the agent, of less value than the balance of the shortage in excess of the note and mortgage, and subsequently enforced such mortgage, but did no other act in ratification of the settlement. *Held*, that the principal might rescind the settlement as to the goods discovered after it was made, and reclaim such goods.

2. If a person purchase or obtain goods of another by fraud, paying a part of the agreed consideration therefor, and thereafter part with a portion of such goods to a *bona fide* purchaser, such other, upon discovering the fraud, may affirm the transaction *in toto* as to the property beyond his reach, and rescind it *in toto* as to all goods in the hands of his vendee not subject to the *bona fide* claim of any one else, and reclaim such goods without returning or offering to return what was by him received upon the transaction if it was not sufficient to more than pay for the goods not so reclaimed. The doctrine that in order to avoid a sale of property induced by fraud it is requisite that the defrauding party be completely restored to his former situation, and that any act of the defrauded party after discovering the fraud, recognizing the validity of the transaction, constitutes an irrevocable election to ratify it, is not without exception, notably, that when the transaction is separable, without injustice to the wrongdoer, in accordance with the situation of the property as regards being part subject to reclamation by the vendor by reason of being under his control, and the other not, by reason of its having been transferred to innocent third parties, the election will be construed as affecting the latter part only if that can reasonably be done, as where the act recog-

Gay vs. D. M. Osborne & Co.

nizing the validity of the transaction merely consists in retaining payment or enforcing payment for goods sold to innocent third parties.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Reversed.*

The appeal is from a judgment in plaintiff's favor in an action to recover the value of a quantity of binding twine alleged to be the property of plaintiff and to have been wrongfully converted by defendant to its own use. The undisputed facts are that from April 15, 1897, to October 1, 1897, J. W. Dowling was agent for the defendant under a written contract to receive, care for, sell, and account for, its goods in Madison, Wisconsin, and that vicinity. The agency contract required Dowling at the termination thereof to turn over to the defendant all unsold goods. During the existence of the agency, Dowling shipped some binding twine, the property in question, to one Voss, a subagent for defendant at Marxville, Wisconsin, where it was held as defendant's property down to the time of the seizure thereof by defendant hereafter mentioned, unless the title thereto passed to plaintiff by reason of the following facts:

Soon after the termination of the agency contract Dowling and defendant, by its authorized agent, had an accounting at which all property of defendant that had come to Dowling's possession under the contract was charged to him, and all then in the warehouse at Madison, supposed to include all unsold property, was credited to him, and the other credits to which he was entitled were likewise allowed him, leaving a balance of property unaccounted for amounting in value to $1,861.98. Dowling did not disclose the fact that the binding twine was at Marxville, undisposed of. It was therefore included in the apparent shortage of $1,861.98, defendant having no knowledge but that Dowling had sold the same till shortly before it took possession thereof as herein-

after mentioned. November 22, 1897, Dowling gave defendant a note for $1,000 secured by a chattel mortgage to apply on the $1,861.98. Thereafter defendant discovered the facts in regard to the binding twine. A few days thereafter defendant foreclosed its chattel mortgage, realizing $269.25.

Thereafter Dowling duly made an assignment of all his property to plaintiff for the benefit of his creditors, whereby plaintiff became the owner of the binding twine if Dowling was such owner. Thereafter defendant took possession of the twine claiming the same as its property. After such seizure, plaintiff commenced this action to recover the value of the twine upon the ground that it belonged to him as assignee of Dowling, and was wrongfully taken and converted by defendant.

The court held that the accounting between Dowling and defendant, the giving of the chattel mortgage, and the enforcement of it with knowledge of the facts, constituted an election by defendant to hold Dowling as a debtor for the binding twine, whereby the title thereto passed to him, and that plaintiff was entitled to recover the value thereof as assignee of Dowling, such value being $123.61, with interest and costs. Judgment was rendered accordingly.

For the appellant there were briefs by *F. J. & C. F. Lamb*, and oral argument by *F. J. Lamb*.

*Frank M. Wootton*, for the respondent, to the point that the relation of debtor and creditor having been once established, the appellant is bound by it, and the title to the twine passed to Mr. Dowling, cited *Morris v. Rexford*, 18 N. Y. 552; *Strong v. Strong*, 102 N. Y. 69; *Moller v. Tuska*, 87 N. Y. 166; *Mills v. Parkhurst*, 126 N. Y. 89; *Kaehler v. Dobberpuhl*, 60 Wis. 256; *Crook v. First Nat. Bank*, 83 Wis. 31; *Warren v. Landry*, 74 Wis. 144; *Franey v. Wauwatosa P. Co.* 99 Wis. 40; *Wirth v. Bartell*, 89 Wis. 594; *Moline P. Co. v. Rodgers*, 53 Kan. 743; *Boots v. Ferguson*, 46 Hun, 129; *Holt Mfg. Co. v. Ewing*, 109 Cal. 353.

MARSHALL, J.   There is no dispute as to the facts in this
case.   They were agreed upon between the parties, and the
findings of the trial court are in substance in accordance
therewith.   The question presented is one of law and may
be stated as follows:  If an agent, appointed for a fixed period
to receive and sell merchandise for his principal and deliver
to the latter at the end of such period all goods left and pay
for those sold, at the time of adjusting his accounts at the
end of the period pretends to produce and exhibit all goods
unsold, resulting in an apparent shortage in his accounts,
representing a large amount of goods which should be on
hand but are not, indicating a disposition thereof and reten-
tion or use of the proceeds by such agent, and subsequently
the principal takes a note with security for a portion of the
shortage and thereafter discovers that such agent had prop-
erty of the principal in a neighboring town in care of a sub-
agent, of less value than the balance of goods unaccounted
for in excess of the note and mortgage, and with knowledge
of the facts in that regard the principal forecloses his mort-
gage, is he precluded thereby from reclaiming the goods so
discovered after the adjustment of the accounts?

The theory of the appellant in this case is that, if adjust-
ing the accounts with Dowling to determine what goods
should be accounted for, and taking the note and mortgage,
constituted an election to treat the value of those unac-
counted for as an indebtedness, such election being made on
the supposition that all unsold goods had been honestly dis-
closed, when the contrary appeared defendant was entitled
to rescind it; and that, the property discovered after the set-
tlement being of less value than the balance of the shortage
in excess of the note and mortgage, the enforcement of such
mortgage did not preclude the principal from claiming such
property.   The theory of respondent, which seems to have
been also the one adopted by the trial court, is that defendant
could not claim the goods discovered after the settlement

without totally rescinding such settlement; that it was a necessary prerequisite to such claim that the defendant should have returned the note and mortgage and restored the agent to the situation existing prior to the settlement, and that the enforcement of the mortgage with knowledge of the facts not only disabled defendant from rescinding the settlement, but constituted a distinct ratification of the acts which gave the agent the status of a debtor for goods unaccounted for instead of a bailee of such goods, thereby transferring the title to the goods to such agent.

The doctrine that an election once made between two inconsistent remedies is binding upon the elector is well understood. It is elementary and has often been applied by this court. *Warren v. Landry*, 74 Wis. 144; *Crook v. First Nat. Bank*, 83 Wis. 31; *Bank of Lodi v. Washburn E. L. & P. Co.* 98 Wis. 547; *Franey v. Wauwatosa P Co.* 99 Wis. 40; *Wirth v. Bartell*, 89 Wis. 594. Also the exception to that doctrine, that an election once made, without negligence, in ignorance of some material fact as to which the opposite party owed the duty of disclosure, may be rescinded within a reasonable time after the discovery of the truth and before any act is done inconsistent with the exercise of that right; and further, the general doctrine that, as a prerequisite to rescission by one person to a contract on the ground of fraud, such person must restore the other party to his original situation; that the rescission must be *in toto*, and that the restoration must be complete as well,— are all familiar. *Grant v. Law*, 29 Wis. 99; *Hyslip v. French*, 52 Wis. 513; *Friend Bros. C. Co. v. Hulbert*, 98 Wis. 183. The governing idea in the authorities is that a person cannot keep the consideration received or retain to himself the advantages of a contract and at the same time repudiate it. So a contract once made or ratified with knowledge of the facts, or one avoided with such knowledge, irrevocably fixes the rights of the parties unless they mutually agree to change

it. "*Electio semel facta non patitur regressum.*"   *Moller v. Tuska,* 87 N. Y. 166; *Pence v. Langdon,* 99 U. S. 578.

To the foregoing doctrine there is a well-recognized exception in many jurisdictions, including this state, that where part payment has been made on a sale contract covering various articles of merchandise, the vendor may rescind the sale for fraud as to a part of the property and reclaim it without returning the amount paid on the contract if the value of the goods reclaimed does not exceed the balance due upon the entire transaction. *Friend Bros. C. Co. v. Hulbert,* 98 Wis. 183. There the facts were that Barney & Katzky, by false representations as to their financial situation, induced plaintiff to sell and deliver to them on credit a large amount of merchandise. Subsequently the vendees paid a considerable amount upon their purchase. Later plaintiff discovered the truth as to the vendees' financial ability, and thereupon, without returning or offering to return the money received, the plaintiff rescinded the sale as to the goods not sold by such vendees and then in the hands of the sheriff who had levied upon the same for other creditors of the vendees, such goods being less in value than the balance due the plaintiffs, and then commenced an action of replevin against such sheriff to recover possession of such goods. The court sustained the action, holding that the plaintiff was entitled to rescind under the circumstances, overruling the claim of the defendant that a total rescission of the contract between the vendor and vendee, and return of the money paid upon the purchase of the goods, was necessary to a reclamation of any portion of them by the vendor. It was then, and is now, well recognized that the ruling was an innovation, to some extent, on the doctrine that there must be a rescission *in toto* and a return of everything of value received upon the sale in order to enable a vendor of property to reclaim any part of it. The exception to the rigorous doctrine requiring total rescission and restoration

appears to be required in order to fit situations where otherwise great injustice would be done. Take the case stated. What reason was there in saying that the vendor should return to his insolvent, fraudulent vendee the balance received, when such vendee had parted to innocent persons with more of the subject of the sale than sufficient to cover the entire amount of such payments, as a condition precedent to a reclamation of the goods still within the reach of the vendor? Such a course would have enabled the wrongdoer to make a profit by the rescission and put the person injured in a far worse plight after the rescission than before.

Rules of law are supposed to be consistent with reason and common sense, so when a proposition is put forward which is not so consistent the presumption at once arises that it is wrong, and such presumption is not successfully met and overcome by showing authority in support of it, if, notwithstanding, the unreasonable character of such proposition yet remains. The right of rescission of a contract for fraud, though a legal right, is based on equitable principles. Therefore the requisites of its exercise should go no further than strict compliance which the dictates of good conscience requires. For that reason the exception to the rule of total rescission indicated has become a part of our jurisprudence. In the *Friend Bros. Case* the vendor could not have rescinded the sale for that part of the goods still under the control of the vendees or the person who stood in their place, and insisted on the contract as to the balance, but could, as was held, retain all payments made, applying the same on account of goods that had passed from the vendees' possession to that of innocent parties, such payments not being in excess of the sale price of such goods, and rescind the sale as to all goods still in a situation to be reclaimed. That doctrine is well supported, as shown in the *Friend Bros. Case*. In *Schoonmaker v. Kelly*, 42 Hun, 299, it was held that a vendor need not return to his fraudulent vendee, as a condition of

rescinding a sale, any greater part of the payments made thereon than sufficient to cover the goods on hand, less their depreciation in value.    To the same effect is *Toole v. First Nat. Bank*, 34 Neb. 863, where it is said, in substance, that if the fraudulent vendee of goods upon which he has made partial payments before the discovery of the fraud by his vendor, sell to innocent parties a portion of such goods, such vendor upon discovering the wrong may retain sufficient of such payments to cover such portion, tender back to the guilty party the balance, and reclaim the goods still in his possession.    Treating of the rights of a vendor in a similar situation, in *Sisson v. Hill*, 18 R. I. 212, where the vendor, having received certain notes and $50 in cash of his fraudulent vendee, and the latter having parted with some of the property before the wrong was discovered, returned the notes, retained the $50 to apply on the goods that had passed beyond its reach, and replevied the goods still in possession of the vendee, and the action was sustained, the court held that the general rule requiring a rescission *in toto* or not at all is not to be applied, without exception, to an executed sale contract; that it should be applied no further than is necessary to give full protection to the wrongdoer; that the law, rightly understood and administered, does not require such a rigorous application of the old doctrine of rescission in favor of the guilty party as to necessarily defeat the remedy of his victim.    *Schofield v. Shiffer*, 156 Pa. St. 65, is to the same effect.

What reason can be assigned why the law should not allow a severance of that part of a sale contract which can stand consistent with strict justice between the parties and which cannot be rescinded and the former situation restored without prejudice to the innocent party to the advantage of the wrongdoers, from that part of the contract as to which the former situation can be completely restored consistent with full protection to the wrongdoer against loss?    None what-

ever, in our judgment.  The idea of those holding to the opposite view is that, the contract being entire, the retention of anything paid upon or any advantage under it, must be deemed necessarily to be in part fulfillment of the contract, hence an affirmance of it.  The more reasonable view is that what had the semblance of a contract is not, by reason of the fraud, a contract at all, because the minds of the parties never met in regard to it.  Therefore if an injured party so elect, and retains the consideration received to the extent of the goods that cannot be reclaimed, as or on account of indemnity for the wrong, the law will treat the contract as separated into two distinct transactions, leaving that part as to which the parties cannot, without prejudice to the rights of one, be restored to their original situation, distinct from that part where such restoration can be made, and apply the rule of total rescission and return of the consideration to that part by itself.

The facts of this case bring it within the principles above discussed.  Dowling committed a fraud upon defendant by not disclosing the fact that he had the binding twine on hand in store at Marxville.  If defendant intended to treat the actual shortage of the agent, on account of goods not on hand, as an indebtedness, there is no circumstance indicating an intention to go further and to swell the amount by goods in possession of the agent which ought to have been disclosed to the principal and turned over.  The purpose was only to include in the shortage the goods which Dowling had actually disposed of and could not therefore restore to the defendant.  The note having been taken for a sum less than the shortage after deducting therefrom the value of the binding twine, upon discovering the fraud of the agent in respect to such twine defendant had a right to treat the former recognition of the shortage as an indebtedness not binding in respect to the twine, and at the same time enforce the note and mortgage.  That separated the transac-

tion in regard to the settlement into two distinct parts, and accomplished just what would have been accomplished in the first instance but for the wrongful conduct of Dowling. The settlement remained binding between the parties as to all goods actually disposed of by the agent, and was nullified as to the goods on hand which were fraudulently represented to have 'been disposed of. That part of the settlement free from fraud was wholly affirmed. That part tainted with fraud and which, without prejudice to Dowling, could stand by itself, was wholly disaffirmed. There was no restoration required as a condition of the disaffirmance, because the note and mortgage were deemed to have been received upon the account for goods that had been actually sold by the agent.

The foregoing answers the proposition stated in the opening lines of the opinion in the affirmative and contrary to the decision of the trial court, which necessitates a reversal of the judgment appealed from.

*By the Court.*— The judgment is reversed, and the cause remanded with directions to render judgment for the defendant in accordance with this opinion.