# WM. B. JOYCE & COMPANY ET AL. *v.* EIFERT, RECEIVER.

[No. 8,598. Filed April 30, 1914.]

1. CORPORATIONS.—*Subscriptions for Stock.*—*Fraud.*—Any person induced to subscribe to the capital stock of a corporation by the fraudulent representations of an agent duly authorized by it to procure subscriptions to its capital stock, may rescind the contract in the same manner and to the same extent as rescission may be had between two natural persons. p. 194.

2. CORPORATIONS.—*Stock Subscriptions.*—*Rescission.*—*Sufficiency.*— A notice filed with a corporation by certain subscribers to its capital stock, stating that they rescinded their subscriptions on the ground of fraud and demanding a return of their notes and cash paid on such subscriptions, as well as the institution of a suit in equity by other subscribers seeking the cancellation of their subscriptions on the same ground, and the appointment of a receiver, each constituted a sufficient rescission of such subscription contracts. p. 194.

3. CORPORATIONS. — *Stock Subscriptions.* — *Rescission.* — *Effect.* — While a rescission of their subscriptions by certain subscribers to the capital stock of a going corporation on the ground of fraud, together with a demand for the cancellation of their notes and a return of the cash paid on such subscriptions, would give them superior legal rights over other subscribers who did not rescind until afterwards, and would not be affected by the subsequent appointment of a receiver in an equitable proceeding where the court is required only to dispose of unpaid subscription notes and distribute funds paid on subscriptions, which were all obtained by fraud which was discovered by all before the completion of the corporation, equity requires that, regardless of the priority of the rescissions, the subscription contracts, in so far as they remained executory, be considered annihilated by the rescission and that they be not considered in the distribution, and that the

cash payments be returned from cash available in the proportion that the cash paid by each bears to the total cash paid by all. p. 195.

From Superior Court of Marion County (82,445) ; *Joseph Collier,* Judge.

Receivership proceeding against the Automobile Insurance Company of America, in which Wm. B. Joyce & Company and another intervened. From a judgment directing the receiver in the making of distribution, the interveners appeal. *Reversed.*

*Edward B. Raub, Frank S. Roby, Ward H. Watson, Sol. H. Esarey* and *Elias D. Salsbury,* for appellants.

*Ernest T. Brown, Ryan & Ruckelshaus, George F. Mull* and *Henry Warrum,* for appellee.

IBACH, J.—The Automobile Insurance Company of America was incorporated under the laws of this State, with an authorized capital stock of 100,000 shares, each of the par value of $10.   During the process of organization a large amount of stock was sold to divers persons throughout the United States by means of gross misrepresentations, and more than $100,000 had been dissipated through agents' commissions, $37\frac{1}{2}$ per cent having been allowed agents securing all stock subscriptions, whether such subscriptions were paid by cash or by note.   Before the organization of the company was completed and before permission had been granted to write any business and before the certificates of stock had been issued, there was an effort made on the part of some of the officers and directors of the company to transfer all of the assets of the company to the Federal Union Surety Company.

The appellants in this case each subscribed $10,000 to the stock of the company, paid $5,000 in cash and issued their separate notes for the remaining $5,000.   On October 18, 1910, about six months after these notes had been executed by appellants they served notices of a rescission of

their subscription contracts on account of fraud and demanded from those in charge of the affairs, a return of their cash payments, as well as a return of their notes. On December 14, 1910, Orin S. Miller, a subscriber for stock, on behalf of himself and all others similarly situated, made application for an injuncton against the transfer of the assets to the Federal Union Surety Company, and for the appointment of a receiver for the assets of the insurance company, for a cancelation of the notes and subscription contracts of the petitioners, and for an accounting. These appellants then filed intervening petitions for the cancelation of their subscription contracts and for the cancelation of their notes on the ground of fraud. They also filed their separate claims as general creditors of the corporation for the amount of their cash payment, charging that it had also been secured by fraud. They also filed their exceptions to the receiver's report which contained substantially the same facts as the claim filed. Their intervening petitions, their separate claims and their exceptions were all answered by a general denial. Upon a hearing embracing both the intervening petitions and the exceptions to the receiver's report, the exceptions were overruled and the prayer of the intervening petitioners was denied. By this determination they were left in what was reported by the receiver as class "B" of subscribers to the capital stock and were allowed as such to share in the assets in the hands of the receiver. From this final order they have appealed.

The court's final decree which embodies all the material elements of the receiver's report is as follows: "And the court being advised, finds that the petitions of Wm. B. Joyce & Company, and Joyce & Company to the final report of the receiver herein, should not be granted as prayed for in said petition or said exceptions to the final report of the receiver sustained. * * * that the evidence adduced by said interveners and each of them does not sustain said petition and exceptions and the court finds

that all of the stockholders were induced to subscribe for stock in said Automobile Insurance Company by reason of fraud. * * * That the stockholders of said company are composed of two classes, viz., those who paid all cash in full on their subscriptions and those who paid part cash only and executed their promissory notes for the remainder of their several subscriptions. That said Wm. B. Joyce & Company executed its note for $5,000, in part payment of its subscription and paid $5,000 in cash; that Joyce & Company executed its note for $5,000 in part payment of its subscription and paid $5,000 in cash; that each of said notes are past due and unpaid and are now held by the receiver; that long before the appointment of a receiver herein, the officers of said Automobile Insurance Company of America had paid out for commissions $37\frac{1}{2}$ per cent or more of the face value of all subscriptions to. the capital stock, whether same was paid by all cash or by part cash and by note. That there was paid by said company out of the cash paid in by Wm. B. Joyce & Company $3,750, and on the subscription of Joyce & Company it had paid out $3,750 and of said cash payments of each of said exceptors there was only remaining at the time the receiver was appointed, and which came into the possession of the receiver, $1,250 on each of said subscriptions. That the stockholders who paid all cash and the funds paid in by them were charged likewise, and the funds paid out by the officers of said company. And the court finds that said stockholders should and they are hereby classified as follows, to wit: Those who paid their respective subscriptions by all cash in full, as class A and those who paid their respective subscriptions, partly in cash and partly by note and the note remains unpaid, as class B. That the petitioners and exceptors are in class B and their respective notes held by the receiver should, in the distribution of the assets of this trust, be treated as cash and should be

Vol. 56—13

returned to them by the receiver on a distribution in lieu of cash.''

It is the contention of appellants that since they ascertained on October 18, 1910, some time before the appointment of the receiver, that they had been defrauded and at that time they formally rescinded their subscription contracts and demanded a return of their notes and cash, that they then became creditors of the company and as to their notes, the court should have adjudicated them null and void and should have ordered the receiver to pay each of them the amount of $5,000 and interest, that being the amount of cash payment made by each at the time their stock was subscribed for.

It is admitted in the briefs of both appellants and appellee that all parties executing the subscription contracts and notes had been defrauded by the agents and officers of the company. It is also apparent that the corporation had never been completed, had never issued any stock and had never written any insurance business, and therefore it never was a going concern, so that it necessarily follows that all the moneys which came into the possession of the receiver for distribution consisted solely of the money which had been paid in by the subscribers on their stock subscriptions and this suit was brought so that these funds might be equitably distributed among those who had paid it in.

The general rule relating to the rescission of contracts for fraud has been well stated in the following language:

''Whenever an agent of a corporation, duly authorized to procure subscriptions to its capital stock, induces persons to subscribe to shares of such stock by fraudulent representations or concealments, any person so defrauded will be entitled to a rescission of the contract in the same manner and to the same extent as between two natural persons.'' 1 Thompson, Corporations (2d ed.) §706. It must be conceded, we think, that the notice which appellants served on the officers of the cor-

poration on October 18, 1910, in view of all the admitted facts, constituted a sufficient notice of a rescission of their contracts. We also hold that the suit in equity begun by Orin S. Miller on December 17, 1910, on his own behalf as a subscriber for stock and for all others similarly situated, was an action on the part of all to disaffirm all their subscriptions and to recover the moneys which had been paid into the corporation by them and no other previous notice was necessary to accomplish a rescission of such subscription contracts. And since we have held that the action on the part of appellants taken on October 18, 1910, constituted a rescission of their contracts, so also we hold that the other subscribers, having discovered the same fraud, by their suit brought on December 17 following, likewise rescinded their contracts. It is quite apparent that if all the parties interested in the organization of this corporation had discovered the fraud at one and the same time, had contributed to the funds of the corporation in manner and kind alike, and had acted as did appellants, then they would all be on an equal footing and an equitable settlement would require a return of the notes and an equal distribution of the funds in the receiver's possession. It is proper to remark here that the briefs fail to disclose any change in the condition of the organization or its assets from the time appellants filed their notices of rescission and the appointment of the receiver, neither is it disclosed that the other subscribers for stock did not act promptly in filing their suit after the discovery of the fraud.

The question then arises, Do the appellants occupy a more advantageous position in a court of equity by reason of the fact that they had not paid their notes prior to their rescission, over the defrauded parties who had paid their subscriptions, in full, had discovered the fraud at a later date, and likewise acted promptly in rescinding their contracts? If this were a suit to enforce

legal rights against a solvent going corporation itself, we would be required to hold that appellants did by their conduct acquire superior rights both as to the cash subscription paid and the notes executed by them, over those of the other defrauded parties, for the status of the parties becomes fixed by a rescission, and one who rescinds must abide his rescission unless the parties mutually agree otherwise. 1 Thompson, Corporations (2d ed.) §731; *Pence* v. *Langdon* (1879), 99 U. S. 578, 25 L. Ed. 420; *Gay* v. *D. M. Osborne & Co.* (1899), 102 Wis. 641, 78 N. W. 1079; *Kearney Milling, etc., Co.* v. *Union Pac. R. Co.* (1896), 97 Iowa 719, 66 N. W. 1059, 59 Am. St. 434; *Thompson* v. *Howard* (1875), 31 Mich. 309. In this case the status of the parties having become fixed by the rescission, the fact that a receiver was subsequently appointed on the application of other defrauded parties would not affect the legal rights of the appellants, who had taken steps to rescind their contracts prior to such appointment. High, Receivers (3d ed.) §§243, 315, 316; Smith, Receiverships §231; *Gainey* v. *Gilson* (1897), 149 Ind. 58, 61, 48 N. E. 633; *Marion Trust Co.* v. *Blish* (1908), 170 Ind. 686, 691, 692, 695, 84 N. E. 814, 85 N. E. 344, 18 L. R. A. (N. S.) 347. This is not a case however, where legal rights are sought against a going concern, but is rather one where the court in the exercise of broad principles of equity is required to dispose of unpaid subscription notes and to distribute funds only which had been fraudulently obtained from all of the subscribers for stock, and where the fraud was discovered by all the parties before the corporation was completed or any business for which it had been formed was transacted. We here have a case in which from its very nature, relief would not be granted except upon equitable terms. *Kline* v. *Vogel* (1886), 90 Mo. 239, 2 S. W. 408; *City of St. Louis* v. *O'Neill Lumber Co.* (1893), 114 Mo. 74, 21 S. W. 484. From all the subscribers to the stock in this suit, 37½ per cent of their subscription was paid to the promoters for

commission, so that in the case of each of these appellants $3,750 was taken out of the $5,000 cash paid, leaving but $1,250 cash and each note for $5,000 to come into the possession of the corporation. It would not be equitable under the facts of this case to hold appellants to the payment of their unpaid notes in the hands of the association, when they had effectually rescinded their contracts. We are disposed to hold therefore, that in so far as appellants' contracts remained executory at the time of the discovery of the fraud, they were by their acts of rescission annihilated, and became from that time null and void. The corporation itself could not have recovered upon appellants' notes if suit had been instituted, because they had a complete defense, and certainly the receiver had no greater right to enforce their payment than the corporation, but the effect of the receiver's report and the court's order approving the same, was to give him an increased right. Appellants have done nothing which might be held a waiver of or estoppel to assert the rights gained by their rescission, for they have refused to participate in the distribution of assets by the receiver, and so far as the record shows, were the only subscribers who did not participate in such distribution.

Therefore, upon the whole case, equity requires that appellants' notes and those of other subscribers received by the company in the same manner be not considered in the distribution of the assets of the corporation and that such notes be returned to them as canceled. As to the cash payments, in view of the holding that all parties acted promptly and rescinded their contracts upon the discovery of the fraud, appellants have acquired no superior rights to those of all the other promoting contributors. Therefore, from the cash fund created by the contributors, appellants should be paid such a proportion of the cash fund in the hands of the receiver as the amount of cash paid in by them bears to the total amount of cash paid in by all the

subscribers. Judgment reversed, with directions that the court sustain appellants' exceptions to the receiver's report and render judgment in conformity with this opinion.

NOTE.—Reported in 105 N. E. 59. As to misrepresentation by corporation for which subscriber to stock may rescind, see 136 Am. St. 748. As to the rescission of subscriptions to stock for fraud and misrepresentation, see 33 L. R. A. 721. See, also, under (1, 2, 3) 10 Cyc. 437.